ESTATE OF HOLLIS R. TEMPLE, DECEASED, BARBARA BARNHILL, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 727–72, 728–72.   Filed November 8, 1976.

*Roland J. Mestayer, Jr.,* for the petitioner.
*Frederick T. Carney* and *Robert W. West,* for the respondent.

---

the following year with amendments only with respect to years of service (reduced to 60 days) and age (reduced to 21).

BRUCE, *Judge:* Respondent determined deficiencies in Federal income taxes and additions to tax for fraud under section 6653(b), I.R.C. 1954,[1] against the taxpayer, Hollis R. Temple, in these consolidated cases[2] as follows:

| Calendar year | Deficiency | Addition to tax sec. 6653(b) |
|---|---|---|
| Docket No. 728–72 | | |
| 1964 | $25,814.73 | $12,907.37 |
| 1965 | 7,188.13 | 3,594.07 |
| Docket No. 727–72 | | |
| 1966 | 17,152.11 | 8,576.06 |

Notices of the deficiencies were mailed to the taxpayer on November 2, 1971, and the petitions herein were filed on January 31, 1972.[3] Since the notices of deficiencies were not mailed to the taxpayer within 3 years from the dates his returns were filed, the assessment and collection of the deficiencies are barred by limitations, sec. 6501(a), unless it is established that the returns were false or fraudulent with the intent to evade tax, sec. 6501(c)(1). Petitioner has conceded that the taxpayer substantially understated on the returns filed by him for 1964, 1965, and 1966 the amounts of income he received from his business operations. With only a few minor exceptions, petitioner does not contest the specific adjustments resulting in the respondent's deficiency determinations, but relies primarily upon the statute of limitations to bar the assessment and collection of the deficiencies.

Accordingly, the principal issues for our decision are whether the taxpayer's returns for 1964, 1965, and 1966 were false or fraudulent within the meaning of section 6501(c)(1), and closely related thereto, whether any part of the underpay-

---

[1] Unless otherwise indicated all statutory references are to the Internal Revenue Code of 1954, as amended.

[2] These cases involve the Federal income tax liability of Hollis R. Temple for different years. On Sept. 14, 1972, pursuant to respondent's motion and with no objection by petitioner, they were consolidated for trial, briefing, and opinion.

[3] The statutory notice of deficiency in docket No. 728–72 was addressed and mailed to both Hollis R. Temple and Ruby Temple, by reason of their having filed joint returns for those years. The petition timely filed herein was captioned in both names, but it was not executed nor verified by Ruby Temple and did not purport to be a petition filed by or on behalf of Ruby Temple. Consequently, respondent's motion to dismiss the case for lack of jurisdiction insofar as it related to Ruby Temple was granted on May 3, 1972, and the caption was amended to reflect only Hollis R. Temple as the petitioner.

ments in tax for each year was due to fraud such that the additions to tax under section 6653(b) are applicable. In addition we have reassessed the admissibility into evidence of an affidavit secured by respondent ex parte from the deceased accountant who prepared the taxpayer's returns for each of the years in issue.

### FINDINGS OF FACT

Some of the facts have been stipulated by the parties, and they are so found. In addition the authenticity of various documents was stipulated at trial. The exhibits so stipulated are incorporated herein by this reference.

Hollis R. Temple (referred to herein as taxpayer or Hollis) was a resident of Gautier, Miss., at the time the petitions were filed herein and at the times his Federal income tax returns for the years 1964, 1965, and 1966 were filed with the District Director of Internal Revenue at Jackson, Miss. In 1964 and 1965, Hollis and his then wife, Ruby Temple, filed joint returns. The 1966 return was also filed as a joint return, but the purported signature of Ruby Temple was a forgery.

Hollis and Ruby Temple experienced marital difficulties during 1965 and subsequently, in March 1968, obtained a divorce. The record does not indicate the time at which they ceased to cohabit. Ruby Temple died in December 1972, and Hollis died, at the age of 63 years, in September 1973. Both deaths preceded the trial of this case.

As a result of Hollis' demise, his estate has been substituted as the party petitioner. Rule 63(a), Tax Court Rules of Practice and Procedure. The estate will hereinafter be referred to as the petitioner.

Throughout the time period involved herein, Hollis reported income derived solely from the operation of Temple Construction Co. (referred to hereinafter as Temple or the company), a sole proprietorship engaged primarily in the installation and repair of underground pipe and sewer lines. He reported his income utilizing the cash basis method of accounting. The taxable income Hollis reported and the understatements determined by respondent are as follows:

| | Taxable income reported on returns | Taxable income determined by respondent | Understatements determined by respondent |
|---|---|---|---|
| 1964 | $27,435.25 | $91,332.52 | $63,897.27 |
| 1965 | 6,534.24 | 31,049.99 | 24,515.75 |
| 1966 | 1,493.46 | 40,816.72 | 39,323.26 |

As will shortly be seen, the majority of the understatements stemmed from income omitted from Temple's cash receipts and disbursements journal and from journal entries erroneously recorded. Perhaps due in part to the lapse of time, much of the testimony at trial with regard to the transactions in question was extremely vague. We have been left to draw our conclusions largely from the documentary evidence and reasonable inferences arising therefrom.

Temple regularly employed approximately eight construction workers (the exact number would vary according to the number of ongoing jobs) and a general office employee whose function included maintenance of the company's books and records on a daily basis. Four such bookkeepers were employed by Temple during the time period with which we are concerned:

| Bookkeepers | Date employed |
|---|---|
| Jean Prassenos | 1958 to September 1965 |
| Anna Burnham | September 1965 to January 1966 |
| Imogene Farnham | January 1966 to October 1966 |
| Gloria Fetzik | October 1966 to 1967 |

In addition W. W. Kerr, a public accountant, was retained to assist the bookkeepers with any accounting problems that should arise and to prepare the taxpayer's Federal income tax returns for each of the years 1964, 1965, and 1966.

Hollis regularly checked on jobs in the field but he did not perform actual construction labor. He did all the ordering of materials and supplies and also the bidding for contracts. Although taxpayer never completed the fourth grade of formal education, in the words of one of his bookkeepers, "[Mr. Temple] was very smart in his business." The company did very little followup billing of customers because Hollis was always aware of who his debtors were.

Temple's bookkeeping system was set up in 1962 or 1963 by a Mr. Anderson, and prior to the retention of W. W. Kerr to prepare Hollis' 1964 return, his Federal income tax returns

were prepared by a Mr. Dye. When Kerr became employed to perform Temple's accounting services, he continued with the existing bookkeeping method.

Temple's books and records consisted of a cash receipts and disbursements journal (hereinafter journal), a general ledger, bank deposit slips, bank statements, check stubs, and incoming and outgoing invoices maintained as records of accounts payable and accounts receivable, respectively. Hollis utilized a single checking account at Merchants & Marine Bank (M & M Bank) in Pascagoula, Miss., for both his private and business affairs. Temple's journal was keyed to the deposits and withdrawals at the M & M Bank account. Consequently, the journal contains information relating to both private and business transactions.

Each bookkeeper testified as to the office practice of maintaining records at the time of her employment, and it remained essentially the same throughout the years with which we are concerned. Receipts were recorded in the journal from bank deposit slips prepared either by Hollis or the bookkeeper. Incoming checks would arrive by mail or be picked up personally by Hollis. When Hollis took receipt of incoming checks, he would endorse them with the company name and his own signature. When a bookkeeper handled the transaction, she would endorse the check with a rubber stamper bearing the company name and the restrictive endorsement "for deposit only." The source of the funds was usually listed on the face of the deposit slip from which the bookkeeper made journal entries. Sometimes the bookkeeper would endorse a check and make out the deposit slip, but Hollis would go to the bank to make the actual deposit. The significance of this office practice is that journal entries were customarily posted from the deposit slips only after a deposit had been made. Thus when Hollis made a deposit, it was incumbent upon him to return the deposit slip to the bookkeeper in order for a journal entry to be recorded.[4]

---

[4] Sometimes unidentified deposits would be posted to the journal from the monthly bank statement, as would counter checks drawn by Hollis. However, these unidentified deposits were usually credited to the taxpayer's drawing account. The company check book was reconciled monthly with the bank statement, but apparently no attempt was ever made to reconcile the journal with any supporting data.

The integrity of the journal is the focal point of our interest because it was the primary source used to prepare taxpayer's Federal income tax returns. Both the journal and the returns for the years in issue report the following gross receipts:

| | |
|---|---|
| 1964 ........................ | [1]$382,400.00 |
| 1965 ........................ | [2]270,800.95 |
| 1966 ........................ | 165,657.96 |

[1] The 1964 return disregarded an additional $0.04 of income per the journal.
[2] Equipment sales of $4,750 per the journal were disregarded and an unidentified adjustment of $19.96 was made.

Taxpayer reported net profits on these receipts as follows:

| | |
|---|---|
| 1964 ........................ | $34,911.47 |
| 1965 ........................ | 9,260.27 |
| 1966 ........................ | 1,493.46 |

Respondent's examination of the taxpayer's Federal income tax liability began in July 1967, when Internal Revenue Agent William Simon was assigned to audit the returns of Hollis and Ruby Temple for the years 1964, 1965, and 1966. Performing an item-by-item analysis, Agent Simon determined taxpayer's gross receipts and net profits to be the following:

| | Gross receipts | Net profits |
|---|---|---|
| 1964............................................. | $398,874.47 | $94,732.52 |
| 1965............................................. | 291,617.98 | 31,901.09 |
| 1966............................................. | 201,043.03 | 43,116.72 |

A large number of specific items formed the basis for respondent's deficiency determinations.

At trial each bookkeeper testified with regard to the transactions which occurred during her employment. Quite naturally, perhaps, the bookkeepers were generally unable to recall the specifics surrounding particular journal entries. Consequently, their testimony in regard thereto was somewhat vague and highly unsatisfactory for the purpose of determining the cause of many of the erroneous journal entries. Each bookkeeper stated in substance that Hollis was unfamiliar with accounting principles and that he took little or no interest in the books and records of the company.

However, the three bookkeepers who were asked did indicate that, when appropriate, Hollis gave them the necessary background information for making journal entries.

The testimony with regard to W. W. Kerr's function was likewise somewhat vague. Jean Prassenos, who was the bookkeeper for over half of the time period involved herein and at the time Kerr was retained, testified that the only time he was in the office to pick up the books was to prepare the 1964 Federal income tax return. Anna Burnham, the bookkeeper from September 1965 to January 1966, indicated that Kerr's office made monthly closing entries in the journal as often as every 1 or 2 months. Imogene Farnham, the bookkeeper from January to October 1966, testified that Kerr had "total responsibility" for the books. She conceded, however, that it was her duty to make daily journal entries. Farnham adhered to her testimony that not many weeks went by that Kerr wasn't in the office "checking on something." Gloria Fetzik, the bookkeeper for the remainder of 1966, testified that Kerr checked the books not as often as monthly. It was the consensus of all the bookkeepers, however, that Kerr was not denied access to any of the books and records that they maintained.

Respondent based his determinations of fraud in Hollis' understatement of his Federal income tax liability for 1964, 1965, and 1966, on the items which follow. With only a few minor exceptions, petitioner concedes that the adjustments to income are proper, but it contends that the resultant deficiencies are due to accounting error rather than fraud.

Temple issued a check dated January 2, 1964, for $1,000 to W. L. Richardson. The relevant journal entry recorded the payment as a debit to legal and professional expense. Richardson was a neighbor of the taxpayer and a practicing attorney in Pascagoula, Miss. Respondent disallowed the deduction.

On February 6, 1964, Temple obtained a $12,000 loan from Hancock Bank. As security for repayment of the obligation, the bank accepted the assignment of an account receivable from Binnings Construction Co. The proceeds of the loan were given to taxpayer in the form of a check for $11,000 and currency in the amount of $1,000. These proceeds were deposited to Temple's checking account at M & M Bank. The

journal entries relevant to this transaction reflect a credit of $11,000 to income from Binnings and a credit of $1,000 to Hollis' drawing account, the latter entry denoted "to repay previous withdrawal." Binnings issued a check dated June 30, 1964, payable jointly to Temple Construction Co. and Hancock Bank, for the sum of $14,219.67. The proceeds of this check were used by the bank to repay the aforementioned loan plus interest, and the excess was given to Hollis in the form of a cashier's check for $2,165.67. This amount was deposited to Temple's bank account on July 2, 1964, with the source of the funds listed on the deposit slip as Hancock Bank. The journal entry reflects an appropriate credit to income from Binnings in the amount of the deposit. The net result of the journal entries pertaining to this transaction was to omit the $1,000 credited to Hollis' drawing account from the journal income account.[5]

Temple received income in the form of a check dated April 6, 1964, from Louis Dreyfus Corp. in the amount of $68.60. Hollis endorsed the check and negotiated it to Cotita's Restaurant. Receipt of this check was noted on the appropriate invoice, but no entry was recorded in the income account of the journal because no bank deposit slip was generated.

Temple received income in the form of two checks dated May 11, 1964, and June 19, 1964, from Brice Building Co., Inc., in the amounts of $356.85 and $649.88, respectively. These checks were endorsed by Hollis and negotiated for cash, but no entries pertaining thereto were recorded in the journal.

On June 29, 1964, Hollis borrowed $11,000 from M & M Bank, which he deposited in the bank account. Hollis then drew a counter check in like amount to purchase a bank draft used as a bid bond on a contemplated job with the Town of Leakesville. The relevant journal entry recorded an $11,000 debit to bid bond expense. The bank draft was subsequently returned to Temple, and Hollis negotiated it to the bank, along with a counter check for accrued interest, in satisfaction of his note obligation. However, no journal entry was made to reduce the bid bond expense account.

---

[5] A legitimate interest deduction of $54 offsets the additional $54 of omitted income.

On July 14, 1964, Temple obtained a loan from M & M Bank in the amount of $2,240. The loan was secured by the assignment of an account receivable from Jackson County, Miss. The proceeds of this loan were deposited in the bank account, and the journal entry of a credit to notes payable was accompanied by the notation "note, to be paid by County Warrant." Jackson County issued to Temple a warrant dated August 4, 1964, in the amount of $2,240. The warrant was not endorsed but was stamped "Credited to the Account of the Within Named Payee" by M & M Bank. It was used to repay the aforementioned loan on August 6, 1964. No journal entry reflecting receipt of this income was made.

On August 13, 1964, income in the form of a check from Sullivan, Long & Hagerty was deposited to Temple's bank account. From the principal amount of $5,114.05, the sum of $300 was withheld at Hollis' request. The journal entry recording this transaction was a credit to income in the net amount of the deposit, thereby omitting income of $300 from the journal account.

Between September and December of 1964, taxpayer expended $4,071.43 for the construction of an equipment storage building. The entire cost of this building was deducted as an expense in 1964, although it constituted a capital expenditure which should have been depreciated annually over the useful life of the building.

Temple received income in the form of a check for $454.05, dated September 14, 1964, from Brice Building Co. This check was endorsed by Hollis, but no journal entry was made to record its receipt.

Temple received income in the form of a check for $289.28, dated September 22, 1964, from Binnings Construction Co. Receipt of this income is not reflected by journal entry.

By a check dated October 2, 1964, Johnny Whitehead of Whitehead Construction Co., loaned Hollis $2,000. The check was made to Hollis Temple individually as payee and was endorsed by him in like manner. Temple repaid the loan by a check dated October 7, 1964. The journal entry recording the repayment expensed $2,000 as equipment rental. Jean Prassenos testified that she knew no reason why she would make an entry unless told that that was what the check was for, and she would take instruction only from Hollis.

A check dated October 20, 1964, from Sullivan, Long & Hagerty, for the amount of $808.15 was endorsed by Hollis and negotiated for cash. No journal entry reflecting receipt of this income was made.

Temple received income in the form of a check for $191.12, dated October 31, 1964, from Jackson County Port Authority. This check was endorsed by Hollis and negotiated to E & T Beverage. The appropriate invoice was marked "Payment received Nov. 11, 1964," but no corresponding entry was made in the journal.

On November 5, 1964, Temple received a check from Patel Properties, Inc., for the amount of $20,059.37, which was deposited in the bank account and properly credited to income in the journal. On the same day, Temple issued a check to Patel for $2,000. This check was charged against income in the journal. On November 20, 1964, Temple received a check from Patel for $2,000. Receipt of this check was noted in the journal by a credit to income and the accompanying notations "repay Estimate Loan" and "Loan Repaid." On December 10, 1964, Temple received two checks from Patel in the amounts of $6,478.75 and $1,346.54. Receipt of the first check was recorded in the journal as a credit to income. The second check was endorsed by Hollis but no journal entry relative thereto was made. On the same date, Temple issued to Patel a check for $1,500. This disbursement was reflected in the journal as a charge against income.

The Patel accounts payable ledger for 1964 relative to Temple Construction Co. appears as follows:

| Date | Items | Debits | Credits | Balance |
|------|-------|--------|---------|---------|
| Nov. 3 | | | $2,000.00 | |
| Nov. 5 | | | 20,059.37 | $22,059.37 |
| Nov. 5 | CK #1918 | $20,059.37 | | 2,000.00 |
| Nov. 11 | CK #1962 | 2,000.00 | | 0 |
| Dec. 9 | | | 1,346.54 | 1,346.54 |
| Dec. 10 | | | 6,478.75 | |
| Dec. 10 | CK #1991 | 1,346.54 | | |
| Dec. 10 | CK #1992 | 6,478.75 | | 0 |

Taxpayer's net understatement of income from Patel from these transactions amounts to $4,846.54, i.e., $3,500 improperly charged against income and receipt of $1,346.54 not recorded in the journal.

The 1964 journal contains a number of yearend closing entries reflecting adjustments for cash disbursements made by Hollis and other credits to accounts payable. The effect of several of these entries was to duplicate and accrue expenses improperly in the amount of $11,347.42.

On March 4, 1964, Temple purchased a Michigan front-end loader from Allied Equipment Co. for $3,605. The loader was sold to George County Gravel Co. on January 19, 1965, for $4,000. Hollis claimed a fictitious loss of $4,076.22 from the sale of the loader on his 1964 Federal income tax return. Respondent determined that in reality Hollis realized a gain of $1,396.40 from the sale in 1965. Neither the $1,001.40 of ordinary gain nor the $197.50 of taxable long-term capital gain was reported on Hollis' 1965 Federal income tax return.

On January 21, 1965, Temple sold a Case 310 crawler for $750. A journal entry was made recording the deposit of the proceeds. However, the gain was not reported on Hollis' 1965 Federal income tax return.

Temple received income in the form of a check dated February 4, 1965, for $906.05 from Sullivan, Long & Hagerty. Hollis endorsed this check and negotiated it at the bank for cash. Receipt of this income was not recorded in the journal.

Patel paid Temple $1,000 by check dated April 12, 1965. The check was endorsed with the rubber stamper used by the bookkeeper. The journal entry reflecting receipt of this check was taken from the bank statement received at the end of the month and was recorded as a credit of $1,000 to taxpayer's drawing account instead of the income account.

During 1965, Temple performed services for and provided goods to Whitehead Construction Co. Two invoices totaling $911.68 were sent to Whitehead. At Temple's request a debt owed to Whitehead was offset by the value of the work reflected on the invoices. Payment of the invoices by application against an outstanding debt constituted income of $911.68 to Temple, but no journal entries recording receipt of the income were made.

On September 7, 1965, Temple received a check from the City of Pascagoula in the amount of $12,772.71. Hollis made out the bank deposit slip, withheld $1,500 cash, and made a net deposit of $11,272.71. The journal entry of a credit to

income reflected only the net amount of the deposit, thereby omitting income of $1,500.

Temple received a check dated October 5, 1965, from Jackson County for $5,336.49. Hollis endorsed the check, made out the bank deposit slip, withheld cash of $336.49, and deposited $5,000 on October 6, 1965. The relevant journal entry reflected income of only $5,000, thereby omitting $336.49 from income.

Temple received income in the form of a check dated October 6, 1965, from Schaupeter Ship Yards, Inc., for the amount of $506.45. Hollis endorsed this check and negotiated it to the Koffee Kup. No bank deposit slip was generated and no journal entry reflecting receipt of the income was made.

Temple received income in the form of another check from Schaupeter Ship Yards, Inc., dated October 18, 1965, for $700. This check was also endorsed by Hollis but no journal entry reflecting its receipt was made.

Temple received income in the form of a check dated October 31, 1965, from Jackson County Port Authority for $424.39. This check was endorsed by Hollis and cashed at the bank. No appropriate journal entry was made.

Temple received two checks dated November 18, 1965. The one from Schaupeter Ship Yards, Inc., for $1,000 was endorsed with the bookkeeper's rubber stamper. The one from Pascagoula Development, Inc., for $8,931.97, was endorsed "for deposit only" by Hollis. Both of these checks were deposited to Temple's bank account on November 19, 1965. No journal entries reflecting receipt of these checks were ever made.

On December 14, 1965, Hollis wrote a counter check for $2,073.33 to M & M Bank. The check represented payment of $2,000 principal and $73.33 interest on an outstanding loan balance of $11,073.33. The journal entry recording this payment was a debit to interest expense of $2,073.33, thereby overstating interest expense by $2,000.

Temple received income in the form of a check dated January 28, 1966, from Patel for $600. The check was endorsed by Hollis and cashed at the bank. The journal does not reflect receipt of this income.

Temple received income in the form of a check for $141.60 dated January 31, 1966, from Jackson County Port Authority.

The check was endorsed by Hollis and negotiated to a third party. Receipt of this income is not reflected in the journal.

During 1966, on February 23 and July 19, Temple sent invoices to Whitehead Construction Co. for $159 and $135, respectively. These amounts were used to further offset the debt owing from Temple to Whitehead. No journal entries reflect receipt of this income in the amount of $294.

Temple received income in the form of a check dated March 14, 1966, for $300 from Patel. The check was negotiated by Hollis to the Koffee Kup. Receipt of this income is not reflected in the journal.

Temple received income in the form of a check from Jackson County Port Authority dated April 20, 1966, for $396.61. The check was endorsed with the rubber stamper used by the bookkeeper, and a deposit slip dated May 17, 1966, was prepared by the bookkeeper. The check was deposited in the bank on May 18, 1966. The deposit is reflected in Temple's checkbook, but no journal entry was made.

Temple received income in the form of a check dated May 20, 1964, for $144 from Bright Homes, Inc. This check was endorsed by Hollis and cashed at the bank. Receipt of the income is not recorded in the journal.

Temple received income in the form of a check dated May 30, 1966, from Jackson County Port Authority in the amount of $966.20. The check was endorsed with the rubber stamper, and a deposit slip dated June 1, 1966, was prepared by the bookkeeper. The check was deposited in the bank on June 3, 1966, and was reflected in the checkbook, but no journal entry was made.

Temple received income in the form of a check dated June 10, 1966, for $279.45 from Pascagoula Development, Inc. The check was endorsed by Hollis, but no journal entry recording its receipt was made.

Temple received income in the form of a check dated June 20, 1966, from Whitehead for $1,200. The check was endorsed by Hollis and cashed by him at the bank. The bookkeeper prepared a deposit slip reflecting a deposit of $1,200 in currency on the same day. The deposit was noted in the checkbook, and a credit entry to taxpayer's drawing account was recorded in the journal. Income of $1,200 was thereby omitted from the journal.

Temple received a check dated July 6, 1966, for $12,803.12 from the City of Moss Point. Hollis prepared the bank deposit slip, endorsed the check, withheld $1,300 cash, and made a net deposit of $11,503.12. The transaction was recorded in the journal as a credit of $12,803.12 to the notes payable account instead of the income account.

Temple received income in the form of a check dated July 15, 1966, for $167.01 from Patel. The check was endorsed by Hollis and cashed by him at the bank. No deposit slip was generated and no journal entry recording receipt of the income was made.

In 1966, taxpayer took steps toward securing a loan from C.I.T. Corp. A check for $500 was sent to C.I.T. and expensed in the journal for loan closing costs. However, the loan was not consummated and on August 8, 1966, C.I.T. refunded $343.68 to Temple. Receipt of this refund was not entered in the journal and no reduction of the expense account was made.

Temple received income in the form of three checks dated August 24, 1966, from the City of Pascagoula, for the amounts of $813.36, $167.50, and $1,353.38. Each check was rubber stamped "for deposit only" and the bookkeeper prepared a deposit slip dated August 26, 1966. An entry in the checkbook reflecting the deposit was made on the same date. The checks were deposited in the bank account on August 29, 1966, but no journal entry reflecting receipt of the checks was made.

Temple received income in the form of a check for $2,824.50 dated October 3, 1966, from First Chemical Corp. Hollis prepared a deposit slip dated October 4, 1966, withheld cash of $1,200, endorsed the check, and deposited the net amount of $1,624.50 in the bank account. The deposit slip did not list the source of the funds. Nevertheless, the bookkeeper noted on the checkbook the correct payor, the amount of cash withheld, and the net deposit. However, no journal entry was recorded.

Temple received a check dated November 9, 1966, for $150 from Pascagoula Fails Funeral Service, Inc. Hollis prepared a deposit slip and deposited the check in the bank account. No journal entry reflecting receipt of the check was made.

Temple received income in the form of a check from Community Developers, Inc., dated December 23, 1966, for $6,600. The check was endorsed with the rubber stamper, but

the deposit slip was prepared by Hollis. A net deposit of $5,400 was made, with $1,000 being applied on a note and $260 cash withheld by Hollis. The journal entry recording this transaction reflected the net deposit of $5,400, with credit entries of $260 to taxpayer's drawing account, $1,000 to the notes payable account, and $4,140 to the income account. Such recordation omitted income of $2,520.

The foregoing transactions reveal that Hollis negotiated checks which were not recorded as income in the journal during all 3 years as follows:

| Payor | 1964 | 1965 | 1966 |
|---|---|---|---|
| Jackson County Port Authority | $191.12 | $424.39 | $141.60 |
| Patel Properties, Inc. | | | 167.01 |
| Patel Properties, Inc. | | | 300.00 |
| Patel Properties, Inc. | | | 600.00 |
| Schaupeter Ship Yards, Inc. | | 506.45 | |
| Schaupeter Ship Yards, Inc. | | 700.00 | |
| Brice Bldg. Co., Inc. | 356.85 | | |
| Brice Bldg. Co., Inc. | 649.88 | | |
| Brice Bldg. Co., Inc. | 454.05 | | |
| Sullivan, Long & Hagerty | 808.15 | 906.05 | |
| Louis Dreyfus & Co. | 68.60 | | |
| Bright Homes, Inc. | | | 144.00 |
| Totals | 2,528.65 | 2,536.89 | 1,352.61 |

Including the above items, Temple's journal failed to reflect income and overstated expenses by the following amounts:

| | 1964 | 1965 | 1966 |
|---|---|---|---|
| Omitted income | $11,204.47 | $16,217.03 | $25,120.73 |
| Overstated expenses | 29,419.12 | 2,000.00 | 343.68 |

In addition, the failure to properly account for sales of two pieces of construction equipment reduced the income Hollis reported in 1964 and 1965 as follows:

| | 1964 | 1965 |
|---|---|---|
| Fictitious loss | $4,076.22 | |
| Nonreported gain: | | |
| (a) Ordinary gain | | $1,751.40 |
| (b) Long-term capital gain | | 197.50 |

Based on Agent Simon's recommendation, on August 18, 1967, Special Agent Joe Fail of the Intelligence Division was assigned to investigate Hollis' tax affairs for the advisability of criminal prosecution. On October 25, 1967, Agent Simon

and Special Agent Fail interviewed Hollis and were informed that any questions they desired to ask him could be answered by his accountants, W. W. Kerr and a Mr. Peavey.

Shortly thereafter, by letter dated October 26, 1967, Special Agent Fail was informed that Roland J. Mestayer, Jr., had been retained to represent Hollis during the investigation of both his civil and criminal tax liability, and that no information with regard thereto would be forthcoming from the taxpayer until the Intelligence Division withdrew from the case. Enclosed with the letter was a power of attorney running from Hollis to Mestayer. Although this document was defective, a power of attorney was subsequently perfected and forwarded to Special Agent Fail.

During the course of his investigation, on February 20, 1968, Special Agent Fail secured an affidavit from W. W. Kerr. Kerr was deceased at the time of the trial herein, but his affidavit was received into evidence over the objection of petitioner's counsel. At the close of the trial, the record was held open for submission into evidence of a transcript of Kerr's testimony before the grand jury investigating taxpayer's criminal liability. In a prior decision, reported at 65 T.C. 776, this Court held the transcript to be inadmissible in this case.

Statutory notices of deficiencies were sent to taxpayer on November 2, 1971, containing the determination and assertion of deficiencies in Federal income tax and additions to tax under section 6653(b) as set forth at the outset of this opinion.

## ULTIMATE FINDINGS OF FACT

At least a part of the deficiency in Hollis R. Temple's income tax liability for 1964, 1965, and 1966 was due to fraud with the intent to evade tax.

The tax returns filed by Hollis R. Temple for 1964, 1965, and 1966 were false and fraudulent with the intent to evade tax.

Hollis R. Temple understated his taxable income for each of the years involved by the amounts as determined by respondent.

OPINION

Although petitioner and respondent have been unable to agree as to the exact amount of underreported income, petitioner has conceded that the record as a whole supports the conclusion that Hollis substantially understated his taxable income on the returns he filed for 1964, 1965, and 1966. However, since respondent's notices of deficiencies were mailed more than 3 years after the returns were filed, petitioner relies upon section 6501(a) to bar the assessment and collection of the resultant deficiencies. We must sustain petitioner's position unless the returns were false or fraudulent within the meaning of section 6501(c)(1).[6]

Standing alone, of course, petitioner's concession does not establish fraud. The determination of fraud is an issue of fact to be resolved from a consideration of the entire record. *William G. Stratton,* 54 T.C. 255 (1970). On this issue, respondent has the burden of proving by clear and convincing evidence that at least a part of the understatement in income for each year was due to fraud with the intent to evade tax. Rule 142(b), Tax Court Rules of Practice and Procedure; *Cefalu v. Commissioner,* 276 F.2d 122 (5th Cir. 1960); *Tsuneo Otsuki,* 53 T.C. 96, 106 (1969). "The fraud meant is actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing." *Mitchell v. Commissioner,* 118 F.2d 308, 310 (5th Cir. 1941).

If respondent has met his burden for any year, the 50-percent addition to tax is properly applied to the entire deficiency for that year, section 6653(b),[7] and there is no statutory time limit on the collection of the deficiency and

---

[6] SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION.

(c) EXCEPTIONS.—

(1) FALSE RETURN.—In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.

[7] SEC. 6653. FAILURE TO PAY TAX.

(b) FRAUD.—If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a). In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse.

addition to tax for that year. *Nathaniel M. Stone,* 56 T.C. 213 (1971).

Before proceeding to the merits of the case, it is appropriate that we first consider petitioner's renewed objection to the admissibility of the Kerr affidavit. Kerr was the accountant who prepared taxpayer's returns for each of the years in issue. When Special Agent Fail began his investigation on October 25, 1967, he was instructed by Hollis to direct any questions that he might have to Kerr or another accountant. Shortly thereafter Hollis executed a power of attorney making Roland J. Mestayer, Jr., his representative in all his tax matters. The affidavit in issue was secured from Kerr by Special Agent Fail subsequent to issuance of the power of attorney.

Petitioner objects to the statement on the ground that it constitutes inadmissible hearsay. Petitioner's position is that by reason of the power of attorney running from Hollis to Mestayer, the prior authorization to seek information from Kerr was revoked. In response to this argument, respondent asserts only that petitioner's position is "manifestly incorrect."

Kerr's affidavit is basically a self-serving statement tending to exculpate himself from any intentional misrepresentations on the Federal income tax returns in issue herein. As such it tends to refute petitioner's theory of the case, but the affidavit has little substantive content. Because it was obtained by the Government ex parte, petitioner had no opportunity to cross-examine Kerr, and because both Hollis and Kerr were deceased at the time of trial, no opportunity to refute or further clarify the statements contained therein.

We have concluded *infra* that respondent made his case without the benefit of the affidavit. Therefore we will not belabor this issue any further. Although the affidavit and the circumstances of its acquisition differ substantially from the grand jury testimony previously rejected as evidence in this case, we have serious reservations about its admissibility. See *Estate of Hollis R. Temple,* 65 T.C. 776 (1976); *United States v. Brown,* 411 F.2d 1134 (10th Cir. 1969). Consequently, we accord no weight to the content of the affidavit in reaching our conclusions in this case. Cf. *Hicks Co. v. Commissioner,* 470 F.2d 87, 92–93 (1st Cir. 1972).

Petitioner has put forth both affirmative and negative arguments as to what the evidence shows in regard to fraud. Petitioner argues affirmatively that Temple's books and records were adequate for Kerr to accurately determine income for each year, that Hollis relied on Kerr to do so, and that Kerr's failure in that regard does not form a basis for the imputation of fraudulent intent to Hollis. In a negative vein, petitioner argues that the evidence of record is simply not clear and convincing, and that "The death of Temple, prior to the trial date, may well have made the burden of the Respondent impossible to carry."

We acknowledge that the deaths of both Hollis and Kerr may have deprived this Court of some desirable information, but while fraud is never to be imputed or presumed, direct evidence of fraud is seldom available. Its proof must often rest on circumstantial evidence and reasonable inferences drawn therefrom. *Nathaniel M. Stone, supra; Tsuneo Otsuki, supra.* Accordingly, we have carefully examined the entire record in this case and are firmly convinced that Hollis fraudulently underreported his income for 1964, 1965, and 1966. Our conclusion is based upon the affirmative conduct of the taxpayer, the conduct of his business, the consistent and substantial understatements of his income,[8] and the circumstances surrounding the preparation of the fraudulent returns.

As we have seen, the deficiencies in this case resulted from both unreported receipts and overstated expenses. It is clear that for the purpose of fraud, an understatement of taxes can be accomplished by an overstatement of deductions. *Hicks Co.*, 56 T.C. 982, 1019 (1971), affd. 470 F.2d 87 (1st Cir. 1972). With the exception of only a few of respondent's adjustments, the

---

[8] Petitioner submits that the strength of the inference of fraud to be drawn from the substantial omissions of income is lessened in this case because the party from whom the explanation for such omissions would normally come, Hollis Temple, by reason of his death, was not available to testify. The underlying premise of such an assertion *assumes*, however, that an exculpatory explanation exists. It is also inconsistent with petitioner's other assertion that the taxpayer's death may have made the respondent's burden of proving fraud impossible to carry. Without entering into a discussion of the extent to which we give credence to petitioner's argument, it is sufficient to state that our scrutiny of the facts before us leaves us with the definite conviction that at least a part of the understatements in income for each year was due to fraud with the intent to evade tax. Cf. *Estate of Ralph B. Campbell*, 56 T.C. 1, 11 n. 7 (1971).

deficiencies stemmed from income received but not recorded in Temple's journal, and from a substantial number of entries erroneously recorded in the journal.

Petitioner contends that Hollis, being unversed in matters of accounting, relied totally upon Kerr to insure the accuracy of his records and prepare his tax returns. It further contends that the resultant understatements are not such as would cause Hollis to be aware that his income was underreported. We cannot agree with either contention.

At the outset we are not impressed with petitioner's attempt to characterize Hollis as an unknowledgeable businessman. His limited formal education did not prevent him from realizing substantial amounts of income during each of the years in issue. Furthermore, the record shows that Hollis had his fingers on the pulse of the financial affairs of Temple Construction Co.

Hollis' conduct was intimately entwined with the inaccurate recording of his business income. He often took receipt of incoming checks, endorsed them, sometimes withheld cash, and carried them to the bank for deposit. This subsequently resulted in omitted or inaccurate journal entries. Although each bookkeeper testified that Hollis expressed little or no interest in the books, there is not the slightest suggestion that he was unaware that journal entries recording income were customarily made from the deposit slips after a deposit had been made. In fact, three of the bookkeepers testified that upon returning deposit slips to them, Hollis would provide the necessary facts to make the journal entry. In addition Hollis had a consistent practice of cashing checks, which generated no deposit slips, and thereby prevented income from being recorded in the journal.

While a taxpayer's reliance upon his accountant to prepare accurate returns may indicate an absence of fraudulent intent, *John Marinzulich,* 31 T.C. 487, 490 (1958), this is true in the first instance only if the accountant has been supplied with all the information necessary to prepare the returns. Petitioner argues in this regard that Kerr had total access to all of Temple's books and records, so that even though the journal was inaccurate, a thorough professional job of

accounting would have uncovered the inaccuracies.[9] Of course the thorough audit conducted by respondent's agents did discover many omitted and erroneous entries. However, we cannot conclude on the basis of the record before us that Kerr was retained to check with Temple's customers in order to find out whether they made payments to Temple which were not recorded in the journal or to otherwise doublecheck the journal entries made by the bookkeepers. The evidence points to the contrary. Prassenos testified that from the time Kerr was retained until she left Temple in September 1965, he picked up the books only to prepare Hollis' 1964 return. Subsequently Kerr began making monthly closing entries, but there is no indication that any daily entries were ever corrected. Moreover, there is no evidence that Kerr was ever informed that he could not rely on the journal to provide an accurate picture of Temple's business operations, and the lack of such evidence is some proof to the contrary. Cf. *Foster v. Commissioner,* 391 F.2d 727, 732 (4th Cir. 1968).

Even if we were inclined to accept petitioner's argument that Hollis was only grossly negligent in the maintenance of his books and records, we are satisfied that he was no mere innocent beneficiary of the fraudulent returns prepared by Kerr.[10] Hollis' taxable income was understated by $63,897.27 in 1964, $24,515.75 in 1965, and $39,323.26 in 1966. This evidence standing alone is strongly indicative of fraud. *Merritt v. Commissioner,* 301 F.2d 484, 487 (5th Cir. 1962); *Tsuneo*

---

[9] Petitioner maintains that Temple's books and records were adequate to properly reflect the taxpayer's income. However, of the 15 checks identified on the record as having been negotiated by Hollis for cash and not appearing in the journal, receipt of only 2 was shown to have been brought to the attention of a bookkeeper and noted on the appropriate invoices. There is no evidence that any of Temple's records reveal receipt of the other 13 checks. Petitioner attempts to deflate the significance of Hollis' negotiating checks for cash by arguing that the total amounts of understated income resulting therefrom were small and that Hollis could have thought their receipt would be noticed either by the bookkeeper or Kerr. On the basis of the entire record, however, we are unable to concur in petitioner's contention. Cf. *Gene P. Green,* 66 T.C. 538, 550 (1976).

[10] We do not mean by this statement or any other appearing in this opinion to express a conclusion as to whether Kerr knowingly participated in the preparation of the fraudulent returns. There is some evidence, particularly the accrual of expenses in 1964 and the erroneous reporting of gains from the sales of equipment in 1965, indicating that he may have willfully assisted Hollis in understating taxable income. However, that question is not before us, and its resolution does not control the issue of Hollis' fraudulent intent.

*Otsuki, supra* at 108. The gap between the income received and that reported on his returns for each year is simply too substantial for Hollis to have overlooked when he signed the returns. *Foster v. Commissioner, supra* at 733. In 1966 Hollis cashed checks, which were not recorded in the journal, totaling $1,352.61, only slightly less than the $1,493.46 of taxable income he reported for that year. It stretches the bounds of credulity too far, when considered with his affirmative conduct in creating the inaccurate journal, to suggest that Hollis unwittingly accepted Kerr's computations of his taxable income.

In view of the foregoing, the conclusion is inescapable that Hollis fraudulently understated his income with the intention to evade taxes during 1964, 1965, and 1966. Accordingly, the bar to assessment and collection of the deficiencies is lifted, and petitioner is liable for the additions to tax under section 6653(b).

A number of other matters remain for our decision. Respondent determined that Hollis did not properly file a joint return for 1966. In his petition Hollis asserted that he and his wife did file a joint Federal income tax return for 1966. In his amended petition, taxpayer further asserted that he "was married during the year 1966, and the signature of Mrs. Temple on the return was placed thereon by Mrs. Temple." The only pertinent evidence introduced at trial indicated that the name Ruby Temple appearing on the 1966 return was not in fact the signature of Ruby Temple, and we have so concluded. Other evidence revealed that Hollis and Ruby Temple experienced marital difficulties during 1965, and they ultimately obtained a divorce in 1968.

It has long been settled that the absence of the signature of one spouse does not prevent a return from being a joint return, where that is the intention of both spouses. *Estate of Ralph B. Campbell,* 56 T.C. 1, 12 (1971). However, respondent's determination in this regard is prima facie correct and the burden of proof to show error on his part rested upon the petitioner. *Myrna S. Howell,* 10 T.C. 859, 866 (1948), affd. 175 F.2d 240 (6th Cir. 1949). Petitioner accurately summarizes the evidence of record in its reply brief, which states, "There is no proof that Mr. Temple executed the Return on behalf of Mrs. Temple, or that, if he did so, he was not authorized to do so."

Because the burden was on petitioner to show otherwise, we must hold that Hollis did not properly file a joint return for 1966.

Petitioner also argues the conclusions to be drawn from the facts surrounding several of the transactions which were utilized by respondent to determine the income tax deficiencies. As to each of these disputed items, petitioner has the burden of overcoming the presumptive correctness of respondent's determination. Rule 142(a), Tax Court Rules of Practice and Procedure; *Estate of Dorothy E. Beck,* 56 T.C. 297, 340 (1971).

The first adjustment in controversy is respondent's disallowance of the $1,000 deduction for legal and professional fees recorded in the journal as paid to W. L. Richardson by check dated January 2, 1964. The only evidence bearing on this transaction was the journal entry and testimony that Richardson was an attorney and a neighbor of Hollis R. Temple. The bookkeeper who drew the check was unable to recall the purpose of the payment or to refresh her recollection thereof from a memorandum of a prior interview with respondent's agents. We uphold respondent's determination because of petitioner's failure to adduce evidence that the deduction was proper.

Petitioner next contends that $2,240 received by Temple in the form of a check dated August 4, 1964, from Jackson County was in fact reported income. The journal reflects income received from Jackson County on August 4, 1964, in the amounts of $12,887.77, $1,170, and $162.16.[11] Petitioner claims that the $2,240 could have been included in the above amounts, but has produced no evidence to indicate that it was so included. The record further reveals that the county warrant was applied against Temple's outstanding loan balance on August 6, 1964. No corresponding check was issued by Temple in repayment of the loan. We are convinced that respondent's determination is correct.

Petitioner also argues the propriety of two charges against income from Patel Properties, Inc., totaling $3,500, which

---

[11] The journal reflects additional income received on Aug. 4 in the amount of $4,093.64, but this amount was not credited to the Jackson County account. Petitioner cites this larger amount as coming from Jackson County in place of the $162.16 mentioned above. However, this discrepancy does not affect our decision.

respondent determined to be improper. On November 5, 1964, Temple received income from Patel in the amount of $20,059.37. The same day Temple issued a check to Patel for $2,000, and that amount was charged against income. Similarly, on December 10, 1964, Temple received income from Patel and charged $1,500 against income. The purpose of the checks from Temple to Patel has not been identified on the record. However, Temple's journal reflects receipt of additional income of $2,000 from Patel on November 20, 1964. The notations accompanying this entry state "repay estimate loan" and "Loan repaid." We would be inclined to hold that petitioner has established a proper purpose for the $2,000 charge against income but for Patel's accounts payable ledger, which indicates $2,000 owing to Temple on November 3, 1964, 2 days prior to the issuance of Temple's check to Patel. Under the circumstances, we must hold that petitioner has failed to meet its burden of overcoming respondent's presumptively correct determination.

The only item which petitioner contests for 1965 relates to the work performed and goods provided by Temple to Whitehead Construction Co. While acknowledging that the $911.68 offset against Temple's debt obligation constituted income, petitioner contends that it is entitled to a corresponding increase in cost of goods sold. However, the appropriate deductions are already included in the computation of Temple's net profits. The transaction is not a "wash out" as petitioner argues.

The last contested item is a check for $150 received in 1966 from Pascagoula Fails Funeral Service. Respondent's witness who was to testify as to the nature of this payment was unable to appear at trial. Petitioner contends that since the purpose of the check was not identified on the record, it does not constitute taxable income. However, petitioner had the burden to refute respondent's determination and this it did not do.

To reflect the foregoing,

*Decisions will be entered for the respondent.*