L. W. MORRIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; L. W. MORRIS AND LOTTIE F. MORRIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Morris v. Commissioner
Docket Nos. 7318-91, 7319-91
United States Tax Court
T.C. Memo 1992-635; 1992 Tax Ct. Memo LEXIS 665; 64 T.C.M. (CCH) 1192; October 29, 1992, Filed *665 Decisions will be entered under Rule 155. For Petitioners: Harris H. Barnes, III, and Grady F. Tollison, Jr.
For Respondent: Robert W. West. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined the following deficiencies in and additions to petitioners' Federal income taxes: Additions to Tax
Docket
Sec.
Sec.
Sec.
Sec.
Number
Year
Deficiency
6653(b)
6653(b)(1)
6653(b)(2)
6661
7318-91
1980
---   $ 14,346
---   ---
---  L. W.
Morris
7319-91
1981
$ 75,912
37,956
---   ---
---  L. W. and
1982
78,231
--- $ 39,116
50% of the
$ 19,558
Lottie F.
interest due
Morris
on $ 78,231
1983
66,897
--- 37,101
50% of the
18,588
interest due
on $ 74,352
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. During trial, respondent conceded that petitioner Lottie F. Morris is not liable for the additions to tax for fraud. The issues for decision are (1) whether petitioners underpaid their taxes for the years in issue due to the fraud of L. W. Morris *666 (Mr. Morris) and (2) whether Lottie F. Morris (Mrs. Morris) is entitled to relief under section 6013(e) as an innocent spouse. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in rural Mississippi at the time their petitions were filed. Petitioners are high school graduates. Beginning in 1974, Mr. Morris owned and operated a sole proprietorship under the name of L. W. Morris Trucking Company (the trucking business). The trucking business was engaged in hauling products such as sawdust and bark for customers. Mr. Morris also sold gravel to customers for road building and other purposes. The major customer of the trucking business during the years in issue was the Weyerhaeuser Company, from which petitioners received at least $ 383,591 in 1981, $ 629,798 in 1982, and $ 189,419 in 1983. In 1983, petitioners lost their contract with Weyerhaeuser Company, and the trucking business ceased. Petitioners were also engaged in farming and sold grain and other farm products that they produced. Petitioners also received interest income during the years in issue. During 1983, Mr. *667 Morris sold 16 pieces of equipment at public auction and received proceeds of $ 142,038. He kept no records of what was sold. He also sold a separate piece of equipment for $ 15,000. Approximately $ 90,000 of the proceeds of sale was used to purchase a certificate of deposit in 1983. Petitioners prepared income and expense summaries for the trucking business for the years in issue. The summaries were maintained by Mrs. Morris in a spiral notebook. As Forms 1099 were received, Mrs. Morris placed them in the spiral notebooks. Mrs. Morris reconciled the bank account of the trucking business and transferred funds from that account to her own account. She also had access to certificates of deposit maintained in the joint names of petitioners. In 1985, certain certificates of deposit were changed to reflect ownership in Mrs. Morris' name alone. Petitioners filed joint Federal income tax returns for the years in issue. The returns were prepared by Sonny Clanton (Clanton) from 1976 through 1983. Clanton received an undergraduate degree in accounting and a law degree. Shortly before April 15 of each year, Mr. Morris took to Clanton the spiral notebooks maintained by Mrs. Morris. *668 In addition, Mr. Morris, on most occasions, orally relayed information to Clanton concerning income and expenses of the trucking business and other items. Petitioners did not maintain books and records adequate to determine their correct income, expenses, or tax liability. Clanton did not refer to bank deposits or other records in preparing petitioners' tax returns. He merely accepted Mr. Morris' representations of the amount of income and expenses to be reported on the returns. Petitioners employed Clanton solely to complete tax forms and not to determine their correct income or expenses. Petitioners' gross receipts from the trucking business were understated in the amounts of at least $ 85,029, $ 152,514, $ 121,149, and $ 103,060, for 1980, 1981, 1982, and 1983, respectively, for a total understatement of gross receipts of at least $ 461,752 for the 4-year period. Petitioners also understated farming income and interest income. Depreciation was claimed in 1983 for equipment that had previously been sold, and proceeds of the equipment sales were not reported. Petitioners' Federal income tax returns contained other errors, some of which benefited petitioners and some of which *669 did not. In 1985, the Internal Revenue Service began an examination of petitioners' tax returns for the years in issue. Mr. Morris provided an IRS special agent with five boxes of records, including original bank records. The bank records were not sufficient to determine gross receipts correctly, however, because Mr. Morris endorsed and negotiated for cash checks totaling over $ 100,000 during the years in issue. Additionally, petitioner withdrew cash of at least $ 56,000 from deposits into the trucking business bank account. Petitioners' trucking business income could not be reconstructed from Forms 1099 received by petitioners because not all income reported on Forms 1099 was reported on petitioners' tax returns, and not all income received by petitioners was reported on Forms 1099. ULTIMATE FINDINGS OF FACT Petitioners underpaid their Federal income taxes for 1980, 1981, 1982, and 1983, due to fraud on the part of Mr. Morris. It is not inequitable to hold Mrs. Morris liable for the deficiencies in tax for those years or for the additions to tax under section 6661. OPINION Petitioners have conceded that they understated their taxable income and understated their Federal *670 income tax for each of the years in issue. They contend, however, that respondent has not proven fraudulent intent because they relied on Clanton, their tax preparer, to file correct returns. Petitioners paid the agreed deficiency for 1980 prior to the issuance of the statutory notice and contest only the additions to tax for that year. The addition to tax for fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from a taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938). Respondent has the burden of proving, by clear and convincing evidence, an underpayment and that some part of the underpayment for each year was due to fraud. Sec. 7454(a); Rule 142(b). This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. See generally Webb v. Commissioner, 394 F.2d 366, 377-380 (5th Cir. 1968), affg. T.C. Memo. 1966-81, and *671 cases there cited. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Fraud will never be presumed. It may be proved by circumstantial evidence, because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Estate of Temple v. Commissioner, 67 T.C. 143, 159, 161 (1976). The failure to maintain complete and accurate records is an indication of fraud. Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980), and cases cited therein. A pattern of consistent and substantial understatements of income is strong evidence of fraud. Webb v. Commissioner, 394 F.2d at 379; Marcus v. Commissioner, 70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980). In these cases, respondent must also prove fraud in order to overcome the bar of the statute of limitations. See sec. 6501(c)(1). Proof of fraud by Mr. Morris also prevents the running of the period of limitations in favor *672 of Mrs. Morris with respect to the liability on their joint returns. Hicks Co. v. Commissioner, 56 T.C. 982, 1030 (1971), affd. 470 F.2d 87 (1st Cir. 1972). Although respondent conceded toward the close of trial that Mrs. Morris is not liable for the additions to tax for fraud, if fraud on the part of Mr. Morris is proven, Mrs. Morris will be liable for the deficiencies and the additions to tax under section 6661 unless she qualifies as an innocent spouse under section 6013(e). See Stone v. Commissioner, 56 T.C. 213, 226-227 (1971). Petitioners contend that respondent has not proven fraud on the part of Mr. Morris. Petitioners argue that they, and particularly Mr. Morris, were unsophisticated in tax matters and relied on Clanton to prepare their returns. They also argue that 96 percent of their gross receipts was reported and that "all but $ 100,000 of income was traceable through Mr. Morris' bank account." Petitioners argue that the Court should not believe Clanton's testimony about the manner in which information concerning petitioners' income and expenses was conveyed to him, but that *673 we should accept petitioners' assertion that they delivered all their bank records and other information to Clanton. Petitioners argue extensively about the obligations imposed under Internal Revenue Circular 230 on persons practicing before the Internal Revenue Service. Clanton's obligations, however, are not the issue in these cases. We may and do accept Clanton's testimony at trial and reject petitioners' testimony, without vindicating Clanton or suggesting that he performed adequately with respect to petitioners' tax returns. Petitioners' testimony was evasive and improbable. We do not believe that petitioners expected Clanton to determine accurately their gross receipts, their expenses, or their correct tax liability. There is conflicting evidence about when bank records were delivered to Clanton's office, but we need not resolve that dispute. Clanton did not and was not asked to determine petitioners' income from those records. There is uncontradicted testimony that petitioners did not take Clanton's advice to file amended tax returns after being audited by the State of Mississippi. Petitioners, not Clanton, handled their business receipts. There is no credible evidence *674 that petitioners advised Clanton that they had cashed substantial checks from customers or that they had sold substantial amounts of equipment in 1983, and they maintained no books and records from which the amounts of cashed checks or sales could be determined by Clanton. They argue that Clanton should have recognized that they had unreported income. Their speculation as to what Clanton might have done, however, is no excuse for what they failed to do. These cases are comparable to Estate of Temple v. Commissioner, supra. We incorporate the same analysis here. The Court stated: [The decedent's estate] contends that * * * [the deceased taxpayer], being unversed in matters of accounting, relied totally upon * * * [the preparer] to insure the accuracy of his records and prepare his tax returns. It further contends that the resultant understatements are not such as would cause * * * [the taxpayer] to be aware that his income was underreported. We cannot agree with either contention. At the outset we are not impressed with * * * [the estate's] attempt to characterize * * * [the taxpayer] as an unknowledgeable businessman. His limited formal *675 education did not prevent him from realizing substantial amounts of income during each of the years in issue. Furthermore, the record shows that * * * [the taxpayer] had his fingers on the pulse of the financial affairs of * * * [his business]. * * * [The taxpayer's] conduct was intimately entwined with the inaccurate recording of his business income. He often took receipt of incoming checks, endorsed them, sometimes withheld cash, and carried them to the bank for deposit. This subsequently resulted in omitted or inaccurate journal entries. * * * In addition, * * * [the taxpayer] had a consistent practice of cashing checks, which generated no deposit slips, and thereby prevented income from being recorded in the journal. While a taxpayer's reliance upon his accountant to prepare an accurate return may indicate an absence of fraudulent intent, this is true in the first instance only if the accountant has been supplied with all the information necessary to prepare the returns. * * * [The estate] argues in this regard that * * * [the preparer] had total access to all of * * * [the business'] books and records, so that even though the journal was inaccurate, a thorough professional *676 job of accounting would have uncovered the inaccuracies. Of course, the thorough audit conducted by respondent's agents did discover many omitted and erroneous entries. However, we cannot conclude on the basis of the record before us that * * * [the preparer] was retained to check with * * * [the business'] customers in order to find out whether they made payments to * * * [the business] which were not recorded in the journal or otherwise doublecheck the journal entries made by the bookkeepers. The evidence points to the contrary. * * * [67 T.C. at 162-163; citation omitted; fn. ref. omitted.] See also Webb v. Commissioner, 394 F.2d at 379-380; Foster v. Commissioner, 391 F.2d 727-732 (4th Cir. 1968), affg. on this issue and revg. on another issue T.C. Memo. 1965-246. Petitioners' reliance on Compton v. Commissioner, T.C. Memo. 1983-647, and similar cases, is misplaced. In Compton, the Court found that the taxpayer had relied on the preparer; here we find that petitioners did not. There the Court found that the taxpayer had *677 delivered to the preparer checkbook stubs that would have shown the correct amount of income. Here we cannot make such a finding, and none of the records maintained by petitioners were adequate to show their correct gross receipts. Considering the entire record, we conclude that respondent has proven by clear and convincing evidence that the underpayments of tax on petitioners' returns for the years in issue were due to fraud on the part of Mr. Morris. The statute of limitations, therefore, does not bar assessment of the deficiencies, and Mr. Morris is liable for the additions to tax under section 6653(b). Petitioners have presented neither evidence nor argument concerning the additions to tax under section 6661 for 1982 and 1983, and none of the exceptions to liability under that section apply. In order to qualify for relief as an innocent spouse under section 6013(e), Mrs. Morris must establish, among other things, that she did not know, and had no reason to know, that there was a substantial understatement of tax on the joint return and that, "taking into account all the facts and circumstances, it is inequitable to hold * * * [her] liable for the deficiency in tax * * * attributable *678 to such substantial understatement". Sec. 6013(e)(1)(C) and (D). None of the other conditions referred to in section 6013(e) are in dispute. Nothing in the record in this case persuades us that Mrs. Morris lacked knowledge, or reason to know, of the understatements of tax on the joint returns, or that it is inequitable to hold her liable for the deficiencies and for the additions to tax under section 6661. Petitioners were married and together at all material times; Mrs. Morris kept records and had access to the trucking business bank account and to the certificates of deposit purchased with unreported funds; there is no indication that Mr. Morris' activities with respect to customer checks were concealed from her; and no other circumstances have been shown that establish inequity. The earnings of Mr. Morris supported both petitioners, and Mrs. Morris was familiar with the activities that gave rise to those earnings. See, e.g., Ewell v. Commissioner, T.C. Memo. 1988-265; Probber v. Commissioner, T.C. Memo. 1985-193, affd. without published opinion 788 F.2d 3 (2d Cir. 1986). While petitioners *679 argue that they maintained a modest lifestyle, they also maintained substantial sums of money in certificates of deposit to which Mrs. Morris had access. Whatever their lifestyle was, so far as the evidence reflects, it was shared equally. So must their tax liabilities be shared. To reflect the stipulations, Decisions will be entered under Rule 155.