GILBERT L. LANE, SR. and VERA E. LANE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lane v. Commissioner
Docket No. 10438-77.
United States Tax Court
T.C. Memo 1980-502; 1980 Tax Ct. Memo LEXIS 83; 41 T.C.M. (CCH) 347; T.C.M. (RIA) 80502; November 10, 1980, Filed *83 Held, part of the underpayment of petitioners' 1971, 1972, and 1973 Federal income taxes was due to fraud on the part of petitioner Gilbert L. Lane, Sr., and therefore, the imposition of the fraud addition to tax against him for those years is sustained. Sec. 6653(b), I.R.C. 1954. Heldfurther, the assessment and collection of the deficiency in petitioners' 1971 Federal income tax is not barred by the statute of limitations. Sec. 6501(c)(1), I.R.C. 1954. Taylor W. O'Hearn, for the petitioners. William R. McCants, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency of $8,730.98 *84 in petitioners' 1971 Federal income tax and imposed additions to tax as follows: Additions to Tax
Taxable Year
Sec. 6653(b) [1]
1971
$ 4,365.49
1972
14,404.31
1973
25,812.19
The principal issue for decision is whether any part of the underpayment of petitioners' Federal income tax for each of the years involved herein was due to fraud on the part of petitioner Gilbert L. Lane, Sr. [2] Petitioners concede the amount of the deficiency determined by respondent for 1971, but maintain that assessment and collection of the deficiency is barred by the statute of limitations on assessment under section 6501(a). Respondent concedes that assessment and collection of the deficiency for 1971 is barred by section 6501(a) unless the income tax return for that year was fraudulent. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners Gilbert L. Lane, Sr., and Vera E. Lane, husband *85 and wife, resided in Crystal River, Florida, when they filed their petition in this case. Petitioners filed joint Federal income tax returns for their 1971, 1972, and 1973 taxable years and an amended 1973 joint Federal income tax return with the Internal Revenue Service Center, Austin, Texas. Gilbert L. Lane, Sr. (hereinafter sometimes referred to as Lane), has a degree in chemical engineering from the University of Tennessee and, at one time, was employed as a chemical engineer. During the years at issue, petitioners engaged in the activities of farming, leasing property, and selling real property. Lane controlled petitioners' business affairs and his wife was never involved therein. In the process of managing his business affairs, Lane would review his bank statements and, on occasion, discover and correct errors made by the bank in preparing a statement. He also kept track of the principal and interest owed to him on several mortgages. As a businessman, Lane recognized that it is a good business practice to maintain adequate records. The records maintained by Lane consisted in part of checks, check stubs (on which Lane recorded his bank deposits), and a journal in which *86 income and expense items were recorded. Petitioners' returns for 1971, 1972, and 1973 were prepared by Willard Douglas Hunt, a licensed public accountant. Mr. Hunt prepared the returns on the basis of income and expense totals compiled and provided to him by Lane. He did not have access to Lane's underlying records. Before preparing petitioners' returns, Mr. Hunt eliminated any clearly nondeductible expenditures from the data supplied to him and questioned Lane to acquire more detail about the income and expense totals. Aside from this, Mr. Hunt relied solely upon the information submitted to him to prepare petitioners' returns, and those returns reflect that information. On their 1971 return, petitioners claimed a long-term capital loss of $3,031.09 from the sale of certain securities on December 16, 1971. The information that Lane gave to his accountant to prepare petitioners' 1972 return included that same loss, specifying the date of sale as November 16, 1972. Consequently, the loss was also claimed on petitioners' 1972 return. On March 13, 1972, petitioners sold Lots 58 and 59 of the Indian Waters, Unit 3-A subdivision of Citrus County, Florida, to Theodor H. and *87 Erna K. Mandl realizing a long-term capital gain of $1,760. Lane did not report any gain from this sale on petitioners' 1972 return. On March 14, 1972, petitioners, together with co-owners J. M. and Ruth M. Chance, sold a parcel of real property located in Citrus County, Florida, to Ily C. Kelly. Petitioners' share of the long-term capital gain from the sale was $4,853.80. None of this gain was reported on petitioners' 1972 return. On April 5, 1972, petitioners sold their interest in a parcel of real property for a gain of $4,497.93, which Lane reported in full on their 1972 return. On May 11, 1972, petitioners sold Lots 22 and 23 of Block "I", Mayfair Garden Acres, Citrus County, Florida, to Charles A. Carden. As part of the consideration for the sale, petitioners received a purchase money mortgage on the property. The purchase money mortgage was satisfied on or before May 9, 1973. Petitioners realized a long-term capital gain of $6,400 from the sale, but reported none of this gain on either their 1972 or 1973 returns. On April 16, 1973, petitioners sold a parcel of real property to George J. and Florance Westermann, receiving a purchase money mortgage as part of *88 the consideration for the sale. Petitioners realized a long-term capital gain of $1,629.60 from the sale, but reported none of this gain on their 1973 return. On May 9, 1973, petitioners sold a parcel of real property located in Citrus County, Florida, to Jo Ann M. Papy and William J. Beck as joint tenants, receiving a mortgage on the property as part of the consideration for the sale. Petitioners realized a long-term capital gain of $28,235.70, none of which was reported on their 1973 return. On May 29, 1973, petitioners sold a parcel of real property located in Citrus County, Florida, to Henry and Lorraine Javer, as trustees, for a sales price of $500,000. Petitioners received $50,000 of the purchase price during 1973 with the Javers executing a mortgage in favor of petitioners to secure the balance of the purchase price. Petitioners realized a long-term capital gain of $367,594.35 from the sale. None of this gain was reported on petitioners' original 1973 return. On their amended 1973 return, however, petitioners reported a realized gain of $308,000 from this sale and a taxable gain of $33,800 under the installment method. On July 1, 1973, petitioners sold two commercial *89 lots for a long-term capital gain of $29,620.55. On their 1973 return, petitioners reported a long-term capital gain of $30,650 from this sale. During 1972 and 1973, Lane made advances to Lanco, Inc., a corporation in which he owned a significant stock interest. Due to the bankruptcy of Lanco, Inc., on October 5, 1973, petitioners claimed a long-term capital loss of $23,500 on their 1973 return attributable to the stock ownership and advances. Lane was unable to substantiate $18,637.01 of the claimed loss. On their 1971 and 1972 returns, and original 1973 return, petitioners reported taxable income of $0, a loss of $2,456.16, and a loss of $4,388.54, respectively. During the Internal Revenue Service's investigation of petitioners' tax liability, Internal Revenue Service representatives met with Lane on several occasions. The meetings held on July 1, 1974, January 27, 1975, and October 17, 1975, were tape recorded by both Lane and the Internal Revenue Service. As a part of the stipulation of facts, the parties submitted transcripts of the Internal Revenue Service tape recordings of these meetings as joint exhibits. On July 1, 1974, Internal Revenue Service Special Agent *90 William L. Hall and Internal Revenue Service Officer Carroll Carter met with Lane and an associate at the offices of Lane Mobile Homes, Crystal River, Florida.Special Agent Hall informed Lane that the investigation concerned the absence of any record that Lane has filed personal income tax returns in the Florida district. Lane told him that he filed under an Arkansas address because he has been filing there for years and owns a farm in Arkansas. Apecial Agent Hall obtained Lane's social security number and initiated some questioning regarding the returns. Lane was unable to answer some of the questions and expressed a general reluctance to answer questions stating that all the information is on his returns. In early January 1975, after petitioners' 1971, 1972, and 1973 returns had been obtained from the Internal Revenue Service Center, Austin, Texas, another meeting with Lane was scheduled. However, when respondent's representatives appeared at the offices of Lane Mobile Homes, Lane was not present. Another appointment was made, and on January 27, 1975, Special Agent Hall and Internal Revenue Service Agent Ralph E. Ravn met with Lane and two of his associates at the offices *91 of Lane Mobile Homes. At that meeting, the agents explained to Lane that they were now examining petitioners' 1971, 1972, and 1973 returns to determine whether those returns were correct as filed. Lene told them that except for a "few little minor things" all of his income was from his farming activities. Special Agent Hall and Revenue Agent Ravn requested access to any books and records used to prepare petitioners' returns, specifically requesting cancelled checks, the journal, bank statements, closing statements, and any working papers furnished to his accountant. Lane advised them that he had not decided whether he would allow them access to his records, but would decide within the next few weeks. On February 27, 1975, Special Agent Hall and Revenue Agent Ravn again met with Lane at the offices of Lane Mobile Homes. At this meeting, Lane allowed them access to his journal, checks, and check stubs. Special Agent Hall and Revenue Agent Ravn were only allowed to examine the records in an unheated back-room. They were not allowed to film or photocopy the records. During that meeting, Lane stated that he prepared the income and expense totals that he gave to his accountant, *92 Mr. Hunt, from his journal wherein he recorded his income and both personal and business expenses. Lane also told Hall and Ravn that all the bank statements requested and all statements of income furnished to him by individuals or firms from which he received income were either lost, misplaced, or destroyed. In response to questioning, Lane stated that all of his income was deposited in his checking accounts, that he could not recall any income he received which was not deposited, and that he did not know of any non-income items which were deposited in his checking accounts. Furthermore, he told them that he attempted to pay everything by check. Throughout the audit of petitioners' returns, Lane was repeatedly requested to provide any records which would support the income and expenses shown on their returns. Aside from the records already mentioned, the only other records provided consisted of several bank statements and bank deposit receipts. In preparing petitioners' 1974 tax return, Mr. Hunt questioned Lane about an unusually large amount of interest set forth in the information provided to him and discovered that the interest was attributable to the 1973 sale to the *93 Javers which was not reported on petitioners' 1973 return. Lane told Mr. Hunt that he did not believe he had to report any income from that sale until he had recovered the cost of the property. Mr. Hunt informed Lane that the sale had to be reported and that an amended 1973 return would have to be filed. The amended return was received by the Internal Revenue Service Center, Austin, Texas, on April 7, 1975. [3]
The records that Lane made available to the Internal Revenue Service were inadequate to complete the examination of petitioners' returns. Lane's journal was not relied on in the examination because there was no documentation for the income and expenses recorded therein and those figures did not always correlate with the income and expense totals provided to Mr. Hunt to prepare petitioners' tax returns. Accordingly, Revenue Agent Ravn resorted to indirect methods of proof to determine petitioners' income and obtained records from outside sources, including bank statements and public records from the Citrus County Courthouse. On October 17, 1975, Special Agent Hall *94 and Revenue Agent Ravn met with Lane in an effort to acquire more information pertaining to his income and expenses for the years under consideration. In response to a request for more bank deposit records, Lane maintained that he had given them all the records he had available. When asked whether he had copies of the closing statements from his purchases and sales of real property in Citrus County, Florida, Lane responded that he did not know. On the basis of records obtained from the Citrus County Courthouse, Revenue Agent Ravn questioned Lane about the above-noted unreported real property sales. Lane indicated that the sales were reported and, at the same time, Lane stated that the sales should have been reported because he gave the information to his accountant. Shortly thereafter, Lane told Ravn that he did not have any profit until he recovered the cost of the property. Finally, Lane stated that he would attempt to obtain the information they needed regarding the real property sales and would provide them with any closing statements he could find. In September 1976, Lane provided statements showing his computation of the gain from the real property sales he made during *95 1972 and 1973. There were several other meetings with Lane, and in November 1976, the audit was completed. Revenue Agent Ravn reconstructed petitioners' taxable income for the years involved using the bank deposits method to determine gross income (excluding capital gains), a specific item method to calculate capital gains from the unreported real estate sales, and an analysis of petitioners' cancelled checks to determine allowable expenses. The reconstruction shows that: 1. On petitioners' 1971, 1972, and 1973 returns, gross income (excluding capital gains) was understated by $11,766.06, $42,885.21, and $22,868.88, respectively. 2. On petitioners' 1971, 1972, and 1973 returns, expenses were overstated by $23,686.61, $28,647.32, and $54,288.40, respectively. 3. On petitioners' 1972 return and original 1973 return, long-term capital gains were understated by $13,013.80 and $65,585.85, respectively. 4. On petitioners' 1972 and 1973 returns, long-term capital losses were overstated by $3,031.09 and $15,567.87, respectively. 5. Petitioners' taxable income for 1971, 1972, and 1973 was $31,255.35, $71,473.24, and $111,987.34, respectively. On or before November 8, 1976, petitioners *96 executed Form 870-I (Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment) agreeing to deficiencies of $28,808.61 and $51,624.37 for 1972 and 1973, respectively. These deficiencies, and the interest thereon, have been paid by petitioners. In the notice of deficiency, respondent determined and asserted and deficiency and the additions to tax under section 6653(b) set forth at the outset of this opinion. ULTIMATE FINDING OF FACT The understatement of taxable income on petitioners' 1971, 1972, and 1973 returns and the resulting underpayments of income tax were due to fraud with the intent to evade taxes on the part of Gilbert L. Lane, Sr. OPINION We must decide whether any part of the underpayment of petitioners' income tax for each of the years involved herein was due to fraud on the part of Gilbert L. Lane, Sr. The assessment and collection of the income tax deficiency for 1971 is barred by the statute of limitations on assessment under section 6501(a) unless we find that petitioners' return for that year was fraudulent. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. *97 Gajewski v. Commissioner,67 T.C. 181, 199 (1976). The burden of proving fraud is on respondent. Sec. 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure. Respondent must affirmatively establish fraud by clear and convincing evidence. Cefalu v. Commissioner, 276 F. 2d 122, 128 (5th Cir. 1960); Beaver v. Commissioner, 55 T.C. 85, 92 (1970). The taxpayer must be shown to have acted with the specific intent to evade a tax believed to be owing. Mitchell v. Commissioner, 118 F. 2d 308, 310 (5th Cir. 1941); Estate of Temple v. Commissioner, 67 T.C. 143, 159 (1976). Since direct evidence of fraud is seldom available, respondent may meet his burden of proof through circumstantial evidence. Brountas v. Commissioner, 73 T.C. 491, 587 (1979); Nicholas v. Commissioner, 70 T.C. 1057, 1065 (1978). The mere understatement of income is insufficient to establish fraudulent intent; however, the consistent and substantial understatement of taxable income represents persuasive evidence of fraud. Cefalu v. Commissioner, supra at 129; Estate of Temple v. Commissioner, supra at 163; *98 Otsuki v. Commissioner, 53 T.C. 96, 108 (1969). In the instant case, the record shows that Lane consistently and substantially understated petitioners' taxable income for the years at issue. This alone is strongly indicative of fraud. [4]
Moreover, the evidence clearly exhibits a pattern of conduct that establishes Lane's fraudulent intent. He consistently and substantially understated gross income and overstated expenses, neglected to report gains from real property sales during 1972 and 1973, claimed the same capital loss for 1971 and 1972, substantially overstated capital *99 losses for 1973, maintained inadequate records, and failed to cooperate in the examination of his returns. Petitioners contend that the understatement of gross income, the overstatement of expenses, the capital loss claimed for both 1971 and 1972, and the overstatement of capital losses for 1973 were the result of Lane's negligent, not fraudulent, failure to maintain adequate records. We disagree. During the trial of the instant case, Lane testified that he thought he was keeping adequate records and was not attempting to defraud the government. We do not believe this self-serving testimony. The record shows that Lane was a competent businessman. His apparent competence as a businessman and his educational background are inconsistent with the contention that the significant inaccuracies in petitioners' returns were due solely to negligence. The understatements of income are simply too substantial for Lane to have overlooked. We consider Lane's inadequate records to represent another indicia of fraud. See Cefalu v. Commissionersupra at 129; Nicholas v. Commissioner, supra at 1066. Furthermore, the record reveals that from the meeting with *100 the Internal Revenue Service on July 1, 1974, through the meeting on October 17, 1975, Lane consistently attempted to frustrate the examination of his returns. The evidence also shows that Lane concealed records and made false and misleading statements to the agents investigating his returns. During the trial, Lane testified that for the years at issue he had maintained the closing statements from his real estate transactions, some bills and receipts regarding the payment of expenses, and all his bank statements. He also testified that he gave the investigating agents all the records they requested. This testimony is particularly astounding because it is clear that these records were requested but were not provided. A course of conduct calculated to mislead or conceal is evidence of fraud. Gajewski v. Commissioner, supra at 200; Beaver v. Commissioner, supra at 93. We conclude that Lane's conduct during the investigation of his returns exhibits a deliberate plan to evade taxes for the years under consideration.
The unreported real property sales constitute additional evidence of fraud for 1972 and 1973. Lane testified that his failure *101 to report these sales was due to a mistake of law. Petitioners maintain that Lane believed he was not required to report the gain from a sale until the cost of the property sold was recovered. We found Lane's testimony to lack credibility and, therefore, reject the proffered explanation for the unreported sales. When questioned about these sales at the October 17, 1975 meeting, Lane made conflicting statements. In addition, the gain from the 1972 sale to Charles A. Carden should have at least been reported on petitioners' 1973 return because the mortgage from that sale was satisfied prior to the end of that year. Furthermore, when Lane's accountant, Mr. Hunt, discovered the unreported 1973 sale to the Javers, he informed Lane that his alleged method of reporting capital gains was improper. Nevertheless, Lane never attempted to correct his other omissions before he was confronted with them by the Internal Revenue Service. In an effort to overcome the substantial evidence of fraud in the instant case, petitioners assert that Lane relied on Mr. Hunt to prepare their tax returns and attempt to attribute fault for the inaccurate returns to him. A taxpayer's reliance on his accountant *102 to prepare accurate returns may indicate an absence of fraudulent intent only if the accountant was supplied with all the information needed to prepare accurate returns. Estate of Temple v. Commissioner, supra at 162. It is clear that Lane provided Mr. Hunt with inaccurate information. Moreover, petitioners offered no explanation for the fact that there was not always a correlation between Lane's journal and the information that he gave to his accountant. The facts show that Mr. Hunt was hired to prepare returns that reflected the information that Lane provided and not necessarily to prepare accurate returns. Upon consideration of the entire record, we hold that respondent has proved by clear and convincing evidence that petitioners' 1971, 1972, and 1973 tax returns were filed with the fraudulent intent to evade taxes on the part of Gilbert L. Lane, Sr.Accordingly, we sustain the imposition of the additions to tax under section 6653(b)[5] and conclude that assessment and collection of the deficiency for 1971 is not barred by the statute of limitations [6] under section 6501. [7]
*103 To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Respondent concedes that no part of the underpayment of tax for each of the years involved herein was due to fraud on the part of petitioner Vera E. Lane.↩
3. The amended return reported that petitioners had to tax liability for their 1973 taxable year.↩
4. We note that where a finding of consistent understatements of income is based upon the taxpayer's failure to overcome the presumptive correctness of respondent's determination of a deficiency, that finding is not considered proof of fraud. George v. Commissioner, 338 F. 2d 221, 223 (1st Cir. 1964); Pigman v. Commissioner, 31 T.C. 356, 370↩ (1958). Our finding of consistent understatements of income, however, is based upon the evidence in the record and petitioners' concession as to the correctness of respondent's determination of those understatements.
5. Section 6653(b) provides, in part, as follows: (b) Fraud.--If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * * ↩
6. While Mrs. Lane is not liable for the additions to tax under section 6653(b), she is liable for the 1971 deficiency because the finding of fraud on the part of her husband removes the bar of the statute of limitations with respect to both of them. Stone v. Commissioner, 56 T.C. 213, 227-228↩ (1971). 7. Section 6501 provides, in part, as follows: (a) General Rule.--Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.
(c) Exceptions.-- (1) False return.--In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.↩