The HICKS CO., INC., etc., Petitioner, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent, Appellee.

Thomas WHEELER et al., Petitioners, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent, Appellee.

Thomas WHEELER, Petitioner, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent, Appellee.

Nos. 72-1058 to 72-1060.

United States Court of Appeals, First Circuit.

Heard Oct. 3, 1972.

Decided Dec. 6, 1972.

John M. Doukas, Boston, Mass., for appellants.

Murray S. Horwitz, Atty., Tax Division, Department of Justice, with whom Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, and Richard W. Perkins, Attys., Tax Division, Department of Justice, were on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

CAMPBELL, Circuit Judge.

Thomas and Shirley C. Wheeler and The Hicks Company, Inc. (hereafter collectively "taxpayers") appeal from the Tax Court's decisions 56 T.C. 982, upholding the Commissioner's determination of unreported income, federal income tax deficiencies and fraud penalties.[1]

No liability for a fraud penalty was assessed against Mrs. Wheeler. 26 U.S. C. § 6653(b) (Supp.1972).

The Hicks Company, Inc. (which for a period after July 22, 1958 was known as The Lynn Corporation, and is hereinafter referred to as "Lynn") is a Massachusetts corporation. It filed income tax returns for each of the taxable years ending on July 31, of 1957, 1958 and 1959. During those years Thomas Wheeler was its sole stockholder, its president, treasurer and a director. He set its policies, directed its activities and made the necessary management decisions.

Thomas Wheeler and his second wife, Shirley, filed joint income tax returns for each of the years 1957 through 1959 (and an amended 1959 return several years later). Thomas Wheeler also filed a joint return for the year 1956 with his first wife, Ruby.

These proceedings are concerned with alleged deficiencies and fraud with respect to taxes shown in each of the foregoing returns.

■ We are satisfied from our review of the record and of the Tax Court's detailed findings regarding each of the alleged tax deficiencies that the former affords substantial support for the latter. We agree with the appellee that it is not sufficient for the taxpayers to show that other and different findings might have been made on the same evidence. "To draw inferences, to weigh the evidence and to declare the result" was the function of the Tax Court. Helvering v. National Grocery Co., 304 U.S. 282, 294, 58 S.Ct. 932, 938, 82 L.Ed. 1346 (1938), rehearing denied, 305 U.S. 669, 59 S.Ct. 56, 83 L.Ed. 434 (1938).

■ We are further satisfied that the Commissioner more than met his burden before the Tax Court of proving by clear and convincing evidence that the deficiencies were due to fraud with intent to evade taxes. We find nothing to add to the Tax Court's careful analysis of the evidence and its warranted

---

1. The Commissioner found, and the Tax Court affirmed, the following deficiencies and penalties:

| The Hicks Co., Inc. | | |
| --- | --- | --- |
| Taxable Year Ended | Income Tax Deficiency | Addition to Tax for Fraud |
| July 31, 1957 | $14,174.52 | $ 7,087.26 |
| July 31, 1958 | 23,495.25 | 11,747.63 |
| July 31, 1959 | 37,216.42 | 18,608.21 |

| | Thomas and Shirley Wheeler | Thomas Wheeler |
| --- | --- | --- |
| Taxable Year Ended | Income Tax Deficiency | Addition to Tax for Fraud |
| Dec. 31, 1957 | $18,050.14 | $ 9,724.64 |
| Dec. 31, 1958 | 2,264.29 | 1,132.14 |
| Dec. 31, 1959 | 1,417.80 | 3,631.80 |

| | Thomas Wheeler | Thomas Wheeler |
| --- | --- | --- |
| Taxable Year Ended | Income Tax Deficiency | Addition to Tax for Fraud |
| Dec. 31, 1956 | $ 3,351.46 | $ 1,675,73 |

and, indeed, virtually inescapable conclusions therefrom.

Accordingly, we proceed to what we believe to be the crucial issue presented on this appeal: namely, the Tax Court's receiving into evidence of an official transcript of the sworn testimony of Raymond L. White, a major prosecution witness at the 1964 trial of Thomas Wheeler on criminal charges of wilful evasion of the payment of income taxes. Criminal No. 63–163–F (U.S.D.C., Mass.) Wheeler was convicted in the district court on four counts; he appealed; and this court reversed, set aside the verdict, and remanded for a new trial. Wheeler v. United States, 351 F.2d 946 (1st Cir. 1965).[2] The reversal resulted from our ruling that the district court had committed harmful error when it refused to permit Wheeler's counsel (who now represents all three taxpayers in the present case) to ask White, on cross examination, "have you claimed or will you claim an informer's reward in this case?" We held that exclusion of the question improperly infringed upon Wheeler's right of cross examination.

Thirteen months after our decision, Thomas Wheeler pleaded nolo contendere to the four counts upon which he had been originally tried, was adjudged guilty, and was fined, terminating the criminal case without a new trial. The witness, Raymond L. White, thereafter became mentally incompetent. When in 1970 the present cases were tried before the Tax Court, he was 72 years old, had been confined for two years in a Veterans Administration Hospital, and was certified by the Hospital's Chief of Staff to be incompetent and unable to testify.

The taxpayers do not now question that White was permanently unavailable. They concede that if there were sufficient identity of parties and issues between the former and the present proceedings, and if Thomas Wheeler's right to cross examination had been fully protected at the former trial, the transcript would be admissible. See Mattox v. United States, 156 U.S. 237, 244, 15 S. Ct. 337, 39 L.Ed. 409 (1895). California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). But they contend that his former testimony is inadmissible because of the absence of those crucial qualifying factors.

■ We reject taxpayers' contention that there was insufficient identity of parties and issues. Absolute identity is not required. What must exist—and we believe existed here—is sufficient identity of issues to ensure that cross examination in the former case was directed to the issues presently relevant, and that the former parties were the same in motive and interest. 5 Wigmore, Evidence, § 1386 (3rd Ed. 1940).

■ The first count in the criminal indictment against Wheeler was for wilful evasion of tax by him and his wife in 1957. It related to the same tax, and raised substantially the same issues, as do the present assertions of deficiency and fraud for that year. The constituent elements of criminal tax evasion and of civil tax fraud are identical. Moore v. United States, 360 F.2d 353, 356 (4th Cir. 1965).

The other three criminal charges were for Wheeler's willful evasion of Lynn's 1957, 1958 and 1959 taxes. While Lynn was not a party as such, Wheeler had been its principal officer and in total control of Lynn. The criminal charges against Wheeler for evasion of Lynn's taxes presented issues essentially similar to those raised by the present assertions of fraud and deficiency for the same taxable years against Lynn directly.

2. Wheeler's conviction was on one count alleging the willful evasion of the payment of federal income taxes due and owing to the United States by him and his wife for the year 1957, and on three counts of willful evasion of tax due and owing by S. D. Hicks & Son Co., and Lynn for the years ended July 31 of 1957, 1958 and 1959. (Lynn and S. D. Hicks & Son Co. were one and the same, the latter's name having been changed to the former on July 22, 1958.)

Thus we find adequate identity of parties [3] and interest.

Taxpayers' remaining point, that excluding the question about informer's reward rendered the cross examination incomplete, is a more serious one.[4] But under all the circumstances we think that the Tax Court did not err by admitting the former testimony.

White's testimony at the criminal trial is contained in just under 300 pages of transcript of which nearly 200 pages are of cross examination. The cross examination was vigorous. Its only obvious deficiency was the erroneous exclusion by the court, over counsel's objection, of the question whether White had claimed or would claim an informer's reward. The trial court stated that there had been "no foundation for the fact that he was an informer", and invited an offer of proof. Wheeler's attorney then stated, though without providing substantiation, "If allowed to answer, the answer would be 'yes'." He then proceeded with his examination.

In holding the court to have erred, we said that White was the Government's principal witness, that he had been employed by Wheeler and by various corporations with which Wheeler was connected, and that had the jury known he planned to claim a reward in the event of Wheeler's conviction, the probative value of his testimony would be weakened. Wheeler v. United States, *supra*, 351 F.2d at 947. We indicated that no further foundation was required to ask a question bearing so obviously upon such a witness's credibility.

The Government argues for admissibility on two grounds: that new evidence produced before the Tax Court shows that White was not an informer and did not, in fact, claim a reward; and that greater leeway is traditionally afforded to courts in non-criminal jury-waived trials to receive evidence.[5]

The evidence before the Tax Court tending to show that White had not been an informer was as follows: Special Agent Dougherty of the Internal Revenue Service testified to seeing and meeting an anonymous informant in the Wheeler case in June, 1959. Upon being shown White's picture, he testified that White was not the informant. Another I.R.S. employee testified that he was the custodian of the only informant's claim file in Massachusetts, and that a search revealed no claim for reward by White or any one else relative to persons and corporations in this case. Finally, Special Agent Ansbigian testified that he was assigned to investigate the taxpayers on September 24, 1959, and has since supervised the investigation and been involved with the case to the date of the present Tax Court trial. He disclaimed any knowledge of White's being an informer, and testified to efforts made by White, during the initial investigation, to cover up certain incriminating matters.

The foregoing evidence does not, of course, squarely meet taxpayers' argument that the cross examination of White was and remains incomplete. It does, however, provide strong grounds from which to infer now that exclusion of the question could not be harmful to Wheeler and the other taxpayers. It is difficult to believe that White would have intended to claim a reward without his informer's status being known at

---

3. We are not troubled by the fact that Mrs. Wheeler was not a party to the criminal proceeding. No fraud penalty has been asserted or found as to her, and her interest was and is in no respect divergent from her husband's.

4. There is no merit to taxpayers' assertion that the district court's refusal to hold White, after completion of direct and cross examination, "in the custody of the court" so that counsel could call

him later as Wheeler's own witness further vitiated the former testimony. White was a resident of the district, and could have been summonsed had Wheeler's counsel so desired. There is no evidence that any attempt was made to recall him.

5. The Government urges that Civil Rule 43(a) announces a policy of inclusion rather than exclusion of probative evidence.

least to Ansbigian, the I.R.S. agent in charge of the case or to Dougherty; or without the claim (if made) appearing in the file.

■ While the deficiency in cross examination was originally serious enough for us to reverse Wheeler's jury conviction, we think it appropriate, in light of the new evidence making it most improbable that White was an informer or had claimed or would claim a reward, to make a fresh evaluation, for purposes of the present non-jury proceeding, of the harmfulness of the trial court's initial error. Plainly former testimony, to be admissible even in a civil non-jury trial, must have included a reasonable opportunity to cross examine. McCormack on Evidence (2nd Ed. 1972), § 255. However, we live in a real world where choices between imperfect alternatives must be made. White is now unavailable. We must decide whether the single imperfection in his cross examination was so harmful to the appellants as to require the exclusion of vital and detailed testimony by a key witness who, but for this matter, was subjected to the most searching and extensive cross examination. Not only is there now uncontradicted evidence from which to infer that the informer issue was without basis, but we are considering the use of White's testimony by an experienced Tax Court judge in a civil proceeding, not by a jury in a criminal case. The Tax Court was on notice of the contention that White might have been seeking an informer's reward. It could consider and, if it so desired, could even assume that possibility together with other facts (including the considerable volume of evidence corroborative of many aspects of White's testimony) in deciding White's overall credibility.

■■ We say, in brief, that the adequacy of cross examination must be viewed in light of the present proceedings as a whole, not in isolation. Were we to believe that the original error carried with it any substantial possibility of affecting the outcome of these pro-

ceedings, we would not hesitate to reverse.

But on the entire record, the erroneous exclusion of the informer question from the otherwise complete cross examination seems insufficiently prejudicial for us to conclude that reasonable opportunity to cross examine was denied. The transcript was properly admitted.

■ Taxpayers object to the Tax Court's admission of White's signed statement (or affidavit) dated November 19, 1959 given to, and authenticated at the trial by Special Agent Ansbigian. The statement lists certain checks as drawn by White in 1957 and recorded in the cash disbursement journal of Lynn. White was the assistant treasurer of Lynn from 1957 through 1959. He maintained Lynn's books and records and was in charge of Lynn's accounting, office personnel and general office work during the period. Thomas Wheeler had authorized White to cooperate with Ansbigian after the investigation had commenced in 1959, and he was aware that Ansbigian was being furnished books, records and tax data in November of 1959. The statement was properly received. It was an admission against Lynn and Wheeler made by their agent concerning a matter within the scope of his then existing agency. *See* Joseph T. Ryerson & Son, Inc. v. H. A. Crane & Brother, Inc., 417 F.2d 1263, 1269 (3rd Cir. 1969). McCormick on Evidence (2d Ed., 1972), § 267. *See also* Revised Draft of Proposed Rules of Evidence for the United States Courts and Magistrates (March 1971), Rule 801(d)(2) and comments.

■ Taxpayers also object to White's question and answer transcript of February 19, 1960, which the Tax Court, after excluding at the trial, referred to in an opinion footnote as having been relied upon "in making some of our findings of fact." The Government argues that the transcript was admissible on the same theory as White's affidavit. Alternatively it argues that it was merely cumulative. We agree at

least with the latter point. Whether or not actually considered by the Tax Court, it could scarcely have affected the outcome as White's statements therein concerning matters material to the Tax Court's findings were repeated in White's own testimony and in the testimony of Special Agent Ansbigian.

Affirmed.