LEONARD M. LEVIE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Levie v. Commissioner
Docket No. 30411-89
United States Tax Court
T.C. Memo 1992-230; 1992 Tax Ct. Memo LEXIS 251; 63 T.C.M. (CCH) 2798; April 20, 1992, Filed *251 Decision will be entered under Rule 155. Leonard M. Levie, pro se. Ross A. Rowley and Paul G. Topolka, for respondent. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent by means of a statutory notice of deficiency determined a deficiency in Federal income taxes due from petitioner for 1985 in the amount of $ 158,064, and additions to tax for fraud under section 6653(b)(1)[1] in the amount of $ 79,032, and section 6653(b)(2) in the amount of 50 percent of the interest due on $ 145,966, and for substantial understatement of income tax under section 6661(a) in the amount of $ 16,808. After concessions, the issues for our consideration are: (1) Whether petitioner is entitled to a $ 100,000 bad debt deduction; (2) whether petitioner is entitled to a $ 100,000 pension plan contribution deduction; *252 (3) whether petitioner is entitled to a $ 30,000 deduction for contributions to a Keogh retirement plan; [2] (4) whether petitioner is liable for additions to tax for fraud; or, in the alternative, (5) whether petitioner is liable for additions to tax for negligence under section 6653(a)(1) and (2); and (6) whether petitioner is liable for the addition to tax for substantial understatement. FINDINGS OF FACT Some of the facts have been stipulated and the stipulation of facts and attached exhibits are incorporated by this reference. At the time of the filing of the petition herein, petitioner resided in Gastonia, North Carolina. Petitioner, Leonard M. Levie, is a graduate of Baltimore Polytechnic Institute, Johns Hopkins University, and The Harvard School of Business. *253 After graduation, petitioner worked in Washington, D.C., for a Senator, a Congressman, and as a staff person for the Democratic National Committee. Petitioner was then employed by Lehman Brothers in New York City, specializing in the trading of U.S. Government bonds with long-term maturities and the corresponding financial futures traded on the Chicago Board of Trade. During his time at Lehman Brothers, an arbitrage desk was established for him in U.S. Government securities. At the end of 1978, petitioner left Lehman Brothers and in early 1979 entered into an employment contract with another investment firm, The Securities Group (TSG). The founders of TSG later became general partners in The Monetary Group (TMG) and The Securities Group 1980 (TSG80). Sometime thereafter, a joint venture known as The Securities Groups (Groups) was formed as a general partnership for the purpose of trading the pooled assets of TSG, TMG, and TSG80. In 1984, petitioner filed proofs of claim for unpaid compensation against TSG, TMG, TSG80, and Groups in bankruptcy proceedings instituted with respect to these entities in the U.S. Bankruptcy Court for the Middle District of Florida. In July 1990, *254 the bankruptcy court determined that the employing partnerships owed petitioner bonus compensation in the total amount of $ 529,436.66 [3] for the years 1980 and 1981. Petitioner did not include any portion of the unpaid bonus compensation on his Federal income tax return for any taxable year. At the end of 1981, petitioner formed a partnership known as Options Arbitrage Group, whose principal area of trading was stocks and stock options. In late 1982, petitioner formed a second partnership known as Financial Options Associates. Both of petitioner's investment firms had seats on the American Stock Exchange. Beginning sometime in 1982 and continuing beyond 1985, petitioner was involved in a "seed stage" venture capital enterprise. This type *255 of activity is the earliest stage of a venture capital enterprise. Seed stage venture capital attempts to exploit the commercial potential of new technologies by locating a particular technology, patent, license or unpatented technology, acquiring the rights to the technology, assembling scientists and managers, and resulting in the formation of new companies. In connection with this activity petitioner formed Allied Venture Associates (AVA), a sole proprietorship, Allied Biomedical Development Corporation (ABD), an S corporation, and Leonard M. Levie, Inc. (LML), established as a holding company for the equity created from AVA and ABD. LML was incorporated under the laws of the State of Delaware on December 17, 1984, and became inoperative and void under the laws of that State on March 1, 1986, for nonpayment of franchise taxes. Petitioner was the sole shareholder of LML, having paid $ 1 for all its shares. No other capital contributions or loans were made to the corporation. LML had no employees nor did it have a corporate checking account. During its existence, LML never filed a Federal tax return and did not earn or receive any gross income. Although the purported purpose *256 for establishing LML was as a holding company, LML did not hold any equity interests and never functioned as a holding company. Eleven days after the formation of LML, a document dated December 28, 1984, entitled "Pension Plan" was signed by petitioner as president of LML. In connection with the plan, petitioner on behalf of LML deposited on October 14, 1985, two checks totaling $ 100,000 in European American Bank. No subsequent contributions were made to the plan. The plan stated it was adopted, "for the purpose of providing for the payment of definite amounts to its eligible employees when they are disabled by accident or sickness or when they are retired from service with the company, or, in the event of death, to their beneficiaries." Although LML had a pro forma plan under section 404, LML's plan failed to comply with the requirements set forth therein. Petitioner subsequently withdrew the funds [4] and utilized them in his venture capital activities. *257 Petitioner wrote two $ 15,000 checks. The first check, dated April 14, 1986, was made payable to the order of Crossland Savings Bank and bears the notation "Keogh Contrib. '85". The second check, dated October 15, 1986, was made payable to the order of European American Bank and bears the notation "Keogh Contribution". Petitioner did not claim a deduction for a contribution to a Keogh plan on his 1985 Federal income tax return, but now seeks a $ 30,000 deduction for contributions to a Keogh plan. Petitioner's Federal income tax return for the year in issue was prepared by Income Tax Preparation Co. (ITP), a tax return preparation firm located in New York, New York. Leonard Cohen (Cohen), the manager of ITP, is a professional income tax return preparer with 46 years of experience. ITP prepares approximately 3,000 returns per year, of which Cohen reviews between 300 to 500. Cohen and Narayan Pirlamarla (Pirlamarla), an employee of ITP, were involved in the preparation of petitioner's return. Pirlamarla completed petitioner's return, and Cohen reviewed and signed the return as preparer. In preparing petitioner's return Pirlamarla and Cohen utilized information and worksheets *258 supplied by petitioner. In the course of discussions with petitioner, Cohen and/or Pirlamarla requested additional information from petitioner, questioned abbreviations on petitioner's worksheets, reviewed the requirements for deductibility of certain items, and requested copies of prior years' returns. Some, but not all, of the information requested was provided by petitioner and was utilized in the preparation of the return. In response to Cohen's request for copies of prior years' returns, petitioner indicated that he had filed such returns but had not retained copies; however, petitioner had not at that time filed individual Federal income tax returns for taxable years 1983 and 1984. Petitioner's Federal income tax return for 1985 was 10 ten pages in length. Petitioner paid ITP approximately $ 1,500 for preparing the return. OPINION 1. Bad Debt Deduction
Section 166 provides that a deduction is allowed for any debt which becomes worthless within the taxable year. Worthless debts arising from unpaid wages and salaries are permitted as a bad debt under section 166 only if the income such items represent has been reported as income on an income tax return, either *259 in the year for which the deduction is claimed or for a prior taxable year. Sec. 1.166-1(e), Income Tax Regs.; Gertz v. Commissioner, 64 T.C. 598 (1975). Petitioner contends he is entitled to a $ 100,000 bad debt deduction for the unpaid bonus compensation owed to him. We need not reach a determination of worthlessness because petitioner did not report the bonus compensation for Federal income tax purposes. Accordingly, petitioner is not entitled to a bad debt deduction. 2. Pension Plan Contribution Deduction
Section 404(a) provides that contributions paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or compensation paid or accrued on account of any employee under a plan deferring the receipt of such compensation, are deductible under section 404 (subject to the limitations provided in section 404(a)(1) through (9) as to the amounts deductible in any year) if such contributions or compensation satisfy the conditions of sections 162 or 212. [5]
*260 Respondent contends that no deduction is allowed because LML was a mere corporate shell and not a functioning corporation. In support of this contention respondent asserts, and we have so found, that LML had no employees, did not maintain a corporate checking account, never filed a Federal income tax return, did not earn or receive any gross income, and despite the purported purpose for which it was established did not hold any equity interests, and never functioned as a holding company. Our determination that petitioner is not entitled to a pension plan deduction would not be altered even if we were to ignore the facts to the contrary and assume that LML was a functioning corporation. In order for a plan to be qualified, both its terms and its operation must meet the statutory requirements. Buzzetta Construction Corp. v. Commissioner, 92 T.C. 641, 646 (1989). The terms of the pension plan were virtually ignored, and the requirements of section 404 were not satisfied. For example, despite the express provisions of the plan, normal contributions were not computed by an actuary, contributions and other plan assets were not held under a trust agreement, an *261 administrative committee was not appointed, the plan was never submitted to the Internal Revenue Service for approval, and plan funds were at all times within the dominion and control of petitioner. See sec. 404(a)(1) through (9). Accordingly, respondent's disallowance of the pension plan contribution deduction is sustained. 3. Keogh Plan Contribution Deduction
Petitioner did not claim a deduction for a contribution to a Keogh plan on his 1985 Federal income tax return. Petitioner now seeks a $ 30,000 deduction for contributions to a Keogh plan. Respondent contends that petitioner is not entitled to a deduction for contribution to a Keogh plan. We agree with respondent. Section 404(a)(8) provides that certain contributions by self-employed individuals to qualified retirement plans are deductible. The requirements for plan qualification are set out in detail in section 401, with the general rule being that a qualified plan must be established by an employer for the exclusive benefit of his employees. Sec. 401(a). To bring self-employed plans within this framework, section 401(c) provides that certain self-employed individuals are treated as "employees". Deductions *262 for contributions to a defined contribution plan under section 414(i) are limited to the lesser of 25 percent of the participant's compensation or $ 30,000. Secs. 404(j) and 415(c)(1). For purposes of this limitation, compensation of a self-employed person means "earned income" as defined in section 401(c)(2). Earned income is defined in section 401(c)(2) as "net earnings from self-employment (as defined in section 1402(a))". Section 1402(a) in turn defines "net earnings from self-employment" as the gross income derived by an individual from any trade or business less the deductions attributable thereto. Petitioner had no net earnings from self-employment for taxable year 1985; in fact, Schedule SE of petitioner's Federal income tax return for taxable year 1985 shows net earnings from self-employment to be a negative $ 139,857. Moreover, petitioner has not carried his burden of establishing that the various statutory requirements for allowance of a Keogh plan contribution deduction have been satisfied. Accordingly, respondent's determination is sustained. 4. Section 6653(b) Additions to Tax for Fraud
Respondent determined that petitioner is liable for additions to *263 tax under section 6653(b) (1) and (2) for fraudulently understating his income by claiming deductions for a bad debt and a pension plan contribution and for the failure to report dividend and interest income. Section 6653(b) provides that if any part of the underpayment is due to fraud, there will be an addition to tax equal to 50 percent of the entire underpayment. Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Powell v. Granquist, 252 F.2d 56, 60 (9th Cir. 1958); Estate of Pittard v. Commissioner, 69 T.C. 391 (1977). Respondent has the burden of proving by clear and convincing evidence that an underpayment exists for the year in issue and that some portion of the underpayment is due to fraud. Sec. 7454(a); Rule 142(b). To meet this burden, respondent must show that petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Hicks Co. v. Commissioner, 470 F.2d 87 (1st Cir. 1972), affg. 56 T.C. 982, 1019-1030 (1971); Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); *264 Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Respondent need not prove the precise amount of the underpayment resulting from fraud, but only that some part of the underpayment of tax for the year in issue is attributable to fraud. Lee v. United States, 466 F.2d 11, 16-17 (5th Cir. 1972); Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), affg. T.C. Memo. 1970-274. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). Fraud is not to be imputed or presumed, it must be established by some independent evidence of fraudulent intent. Beaver v. Commissioner, 55 T.C. 85, 92 (1970); Otsuki v. Commissioner, supra.However, because fraud can rarely be shown by direct proof of a taxpayer's intention, fraud may be proved by circumstantial evidence and reasonable inferences drawn from the *265 facts. Spies v. United States, 317 U.S. 492 (1943); Rowlee v. Commissioner, supra at 1123. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, supra at 105-106. The intent to conceal or mislead may be inferred from a pattern of conduct. Spies v. Commissioner, supra at 499. In deciding section 6653(b) cases, courts have considered a number of indicia of fraud, including: Maintaining inadequate records, failing to cooperate with tax authorities, engaging in illegal activities, dealing in large amounts of cash and making implausible and inconsistent explanations of behavior, and making false and inconsistent statements to revenue agents. See Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980). Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia is persuasive circumstantial evidence *266 of fraud. Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam T.C. Memo. 1982-603; Beaver v. Commissioner, supra at 93. We find that respondent has not met her burden of proving fraud by clear and convincing evidence. Petitioner has conceded that he received dividend and interest income in the aggregate amount of $ 30,846 which he failed to report, however, petitioner maintains that he provided Pirlamarla with Forms 1099 and that this omission was a result of an error on the part of the preparer. Respondent did not call Pirlamarla as a witness. Respondent did call Cohen as a witness; however, Cohen testified that he assumed Pirlamarla had asked petitioner about dividend and interest income but he had no personal knowledge of whether petitioner supplied Pirlamarla with Forms 1099. While we sustain respondent's determination that petitioner is not entitled to deductions claimed for bad debt and pension plan contributions and we note that petitioner's testimony was frequently evasive, respondent has not met the clear and convincing standard of establishing some independent evidence of fraudulent *267 intent. Respondent has, in the alternative, asserted additions to tax for negligence under section 6653(a). This issue was not raised in the statutory notice of deficiency and therefore constitutes a new matter for which respondent bears the burden of proof by a preponderance of the evidence. Rule 142(a). For the year in issue, section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment if any part of the underpayment is due to negligence or intentional disregard of rules and regulations. Section 6653(a) (2) imposes a further addition to tax in an amount equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence or intentional disregard of the rules or regulations. For purposes of this statute, negligence is the "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967)). We conclude that respondent has met her burden regarding section 6653(a) (1) and (2). Petitioner is a highly educated individual *268 who possesses a high degree of sophistication in financial matters. Nonetheless, petitioner contends that the omission of dividend and interest income was the result of an error on the part of the return preparer which petitioner did not detect when he scanned his return. We conclude that petitioner's failure to read his return prior to signing demonstrates that petitioner failed to do what a reasonable and prudent person would have done under the circumstances. Petitioner further contends that he relied upon the judgment of the return preparer in claiming deductions for bad debt and pension plan contributions. As a general rule, the duty of filing accurate returns cannot be avoided by placing responsibility on a tax return preparer. Metra Chem. Corp. v. Commissioner, 88 T.C. 654, 662 (1987); Pritchett v. Commissioner, 63 T.C. 149, 174-175 (1974); Enoch v. Commissioner, 57 T.C. 781, 802 (1972); Soares v. Commissioner, 50 T.C. 909, 914 (1968). This Court has deviated from this general rule upon a showing that the taxpayer furnished the necessary information to his agent who prepared the return. Pessin v. Commissioner, 59 T.C. 473 (1972); *269 Enoch v. Commissioner, supra; Woodbury v. Commissioner, 49 T.C. 180 (1967). Deviation from the general rule is not warranted in this case. We find credible the testimony of Cohen, that he informed petitioner that, in order for the amounts claimed to qualify for a bad debt deduction, petitioner must have previously taken the claimed amount into income. We find equally credible Cohen's testimony that after reviewing the requirements of deductibility with petitioner, that petitioner informed him that his claim "fit one of the categories". In addition, petitioner's disregard of virtually all the requirements of LML's pro forma pension plan which he adopted is strongly indicative of negligence on the part of petitioner. 5. Section 6661(a) Addition to Tax
Respondent also determined that petitioner is liable for the addition to tax for substantial understatement of income tax under section 6661(a). In addition to the amount determined in the statutory notice of deficiency as an addition to tax under section 6661(a), respondent in her answer asserted an increased addition to tax under section 6661(a), which after concessions by the parties, relates solely to petitioner's claimed $ 100,000 bad debt deduction. As in effect for additions assessed after October 21, 1986, section 6661(a) provides for an addition to tax in the amount of 25 percent of the amount of any underpayment attributable to a substantial understatement. Pallottini v. Commissioner, 90 T.C. 498, 501 (1988). *270 "Substantial understatement" is defined as an understatement which exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $ 5,000. Sec. 6661(b)(1)(A). "Understatement" is defined as the amount of the tax required to be shown on the return for the taxable year over the amount of tax imposed which is shown on the return. Sec. 6661(b)(2)(A). The amount of the understatement may be reduced where there is substantial authority for the taxpayer's treatment of an item, or where relevant facts relating to the item are disclosed in the return or on a statement attached to the return as determined in respondent's statutory notice and as asserted in respondent's answer with respect to the bad debt deduction. Sec. 6661(b)(2)(B). Petitioner has not established that he is entitled to a reduction of the understatement because of substantial authority or disclosure. Accordingly, assuming that the Rule 155 computations hereunder disclose a substantial understatement as defined in section 6661(b) (1), we hold that petitioner is liable for the addition to tax under section 6661(a). To reflect the foregoing, Decision will be entered under Rule *271 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise noted.↩
2. With the exception of additions to tax under secs. 6653(a)(1) and (2) and 6653(b)(1) and (2), and respondent's claim, asserted in her answer, for an increased addition to tax under sec. 6661(a)↩ attributable to the $ 100,000 bad debt deduction, petitioner bears the burden of proof with respect to this and all other issues. 3. Petitioner's original claim in the bankruptcy proceeding, calculated by the attorney representing him in that proceeding, was in the aggregate amount of $ 865,060.63. Petitioner accepts the conclusions of the bankruptcy court reducing his claim by $ 335,623.97 as correct.↩
4. Petitioner testified that the funds were loaned to him in his individual capacity; however, no documents evidencing a loan were presented.↩
5. Sec. 404(a) provides as follows: (a) General Rule. -- If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accured on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 212 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); but if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year:
Sec. 1.404(a)-1(b), Income Tax Regs., provides in pertinent part as follows: In order to be deductible under section 404(a), contributions must be expenses which would be deductible under section 162 (relating to trade or business expenses) or 212 (relating to expenses for production of income) if it were not for the provision in section 404(a) that they are deductible, if at all, only under section 404(a). Contributions may therefore be deducted under section 404(a)↩ only to the extent that they are ordinary and necessary expenses during the taxable year in carrying on the trade or business or for the production of income and are compensation for personal services actually rendered. * * *