T.C. Memo. 2009-34


UNITED STATES TAX COURT


GREGORY A. JUNG, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7341-06.                     Filed February 11, 2009.


<u>Gregory A. Fox</u>, for petitioner.

<u>Stephen R. Takeuchi</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined deficiencies, additions to tax, and fraud penalties relating to petitioner's Federal income taxes as follows:

| Year | Deficiency | Additions to Tax Sec. 6651(a)(1) | Penalties Sec. 6663(a) |
|------|------------|----------------------------------|------------------------|
| 1999 | $55,695 | $12,263 | $41,772 |
| 2000 | 148,390 | 36,361 | 111,292 |
| 2001 | 13,832 | 3,560 | 10,374 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After settlement of some issues, the primary issues for decision are whether funds petitioner received in 1999 and 2000 from trusts, from family members, and from a real estate management company constitute income to petitioner and whether petitioner is liable for the section 6663(a) fraud penalties. For convenience, we set forth separately for each issue our findings of fact and our analysis, and we first address the fraud penalties.

Fraud Penalties

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioner resided in Florida.

After graduating from high school, petitioner attended Tulane University in New Orleans. During petitioner's fourth year of college, petitioner was involved in a car accident and

suffered serious brain trauma.  As a result of the accident, petitioner occasionally suffers from short- and long-term memory loss, and occasionally petitioner still relies on family members to manage some of his personal affairs.  After a year off because of the accident, petitioner returned to Tulane University, and in 1984 petitioner received a bachelor's degree in geology.

After managing restaurants for a number of years, petitioner entered graduate school, and in 1989 petitioner received a master's degree in hotel administration from Florida International University.  Petitioner then worked as an assistant manager and manager of several hotels in Florida, Texas, and Costa Rica.

In 1997 petitioner began working in Miami as an operations manager for a large shipping company.  While working for the shipping company, petitioner became interested in investing in rental real estate and in trading securities on his own account. In 1999 petitioner left his job at the shipping company, became a real estate agent in Tampa, Florida, began investing in real estate and in the stock market, and began managing rental real estate.

During 1999, 2000, and 2001 as a result of his rental real estate and securities trading activities petitioner realized substantial income.

With regard to his rental real estate and securities trading activities, petitioner occasionally received advice from his parents, his brother, and his supervisor at the real estate management company where he worked, and petitioner received loans from his parents and brother.

Petitioner's father apparently was a successful business consultant and worked for a large oil company. After retiring, petitioner's father formed a holding company and established a family trust to hold and manage family assets. Petitioner and his brother were named beneficiaries of the trust petitioner's father established. Petitioner's brother was an attorney in Florida.

In 1999 his supervisor at the real estate management company where petitioner worked introduced petitioner to Gregory Mayer (Mayer), an accountant and a promoter of abusive tax avoidance trusts. Petitioner hired Mayer to assist with bookkeeping matters relating to petitioner's rental real estate and securities trading activity. Petitioner also began receiving advice from Mayer on the formation of tax avoidance trusts and on the filing of his Federal income tax returns.

With Mayer's assistance, on January 4, 2000, petitioner formed Aladdin Land Trust (ALT), and petitioner transferred to ALT nominal ownership of three parcels of rental real estate.

Petitioner was the sole beneficiary of ALT, and Mayer was the trustee.

Mayer explained to petitioner the "section 861 theory" that was the basis for Mayer's tax avoidance advice (namely, that most income derived from sources within the United States by a resident U.S. citizen was not subject to Federal income taxes).[1] On the basis of the section 861 theory, Mayer advised petitioner that petitioner was not required to report on his Federal income tax returns any of his income from U.S. sources and that petitioner owed no taxes for 1999.

Petitioner discussed the section 861 theory with his father, his brother, and his supervisor, and they all advised petitioner against relying on the section 861 theory in filing his 1999 individual Federal income tax return. Petitioner did not seek advice from any independent accountants, attorneys, or other professionals regarding the section 861 theory.

On March 7, 2001, petitioner late filed his 1999 individual Federal income tax return, on which he reported zero income and zero taxes due. Attached to petitioner's 1999 individual Federal income tax return was a statement signed by petitioner stating that he relied on the section 861 theory in the preparation of his tax return.

---

[1] For a discussion and rejection of Mayer's sec. 861 theory, see Williams v. Commissioner, 114 T.C. 136 (2000), and IRS Notice 2001-40, 2001-1 C.B. 1355.

On audit, petitioner's 1999 individual Federal income tax return was referred to respondent's Frivolous Claims Unit.  On review, respondent's audit was expanded to include petitioner's 2000 and 2001 Federal income taxes as petitioner had not yet filed tax returns for those years.  On Mayer's advice, during respondent's audit petitioner ignored respondent's requests for financial information and documentation relating to his 1999, 2000, and 2001 income.

Unable to obtain information from petitioner, respondent issued summonses to third parties requesting bank deposit records, brokerage statements, and other information relating to petitioner's 1999, 2000, and 2001 income.  Using deposit information relating to petitioner's bank accounts and sales and basis information relating to petitioner's brokerage accounts, which respondent obtained from third parties, respondent reconstructed petitioner's 1999, 2000, and 2001 income using the bank deposits and cash expenditures methods of proof.

On January 21, 2003, a meeting was held with petitioner, petitioner's brother, Mayer, and respondent's audit examiner.  At the meeting, respondent's audit examiner explained that the section 861 theory was not valid.  Respondent's audit examiner gave to petitioner, to petitioner's brother, and to Mayer copies of IRS Notice 2001-40, 2001-1 C.B. 1355, and also copies of several judicial opinions in which the courts held that the section 861 theory constituted a frivolous tax-protester

argument. Respondent's audit examiner also encouraged petitioner to abandon the section 861 theory, to file a proper amended 1999 Federal income tax return reporting his income and the taxes due thereon, and to file proper 2000 and 2001 Federal income tax returns. At the meeting, petitioner was disruptive and uncooperative and refused to answer the examiner's questions.

Shortly after the above meeting, petitioner's brother reviewed the IRS Notice and the judicial opinions given to him and advised petitioner to terminate his association with Mayer, to abandon the section 861 theory, and to file proper Federal income tax returns for 1999, 2000, and 2001.

On January 27, 2003, petitioner late filed his 2000 individual Federal income tax return on which he reported zero income and zero taxes due. Attached to petitioner's 2000 tax return was a statement signed by petitioner stating that in reporting no income he relied on the section 861 theory.

On February 8, October 7, and October 12, 2004, respectively, petitioner filed with respondent amended Federal income tax returns for 1999 and 2000 and an original Federal income tax return for 2001. By this time respondent had summoned third-party records, and respondent had reconstructed petitioner's income for 1999, 2000, and 2001. On these tax returns petitioner did not use the section 861 theory, but petitioner did not fully report income relating to his rental real estate and to his securities trading activities.

In 2004 respondent sought an injunction action against Mayer for, among other things, preparing abusive tax returns and promoting sham trusts. On March 10, 2005, the U.S. District Court for the Middle District of Florida enjoined Mayer from preparing frivolous tax returns and representing taxpayers before the Commissioner. Mayer discontinued representing petitioner, but Mayer recommended that petitioner retain Joe Izen (Izen), Mayer's attorney. Petitioner consulted with Izen, who advised petitioner not to give up on the section 861 theory and to ignore respondent's requests for information.

On January 10, 2006, respondent mailed to petitioner a notice of deficiency in which respondent determined that petitioner had substantially underreported his income and that petitioner had deficiencies in his 1999, 2000, and 2001 Federal income taxes of $55,695, $148,390, and $13,832, respectively. Respondent also determined that the underpayments were due to petitioner's fraud and therefore that petitioner was liable for the section 6663(a) 75-percent civil fraud penalty on the entire deficiency for each year.

The schedule below reflects the various income and expense adjustments which respondent made in the notice of deficiency and which petitioner and respondent now agree to:

| Year | Agreed Adjustments | | Total Increase |
| | Income/Expense | Amount | in P's Income |
|------|------------------|--------|----------------|
| 1999 | Rental income | $19,203 | |
| | Other income | 19,042 | |
| | Capital gain income | 40,220 | |
| | Miscellaneous expenses | (19,256) | $59,209 |
| | | | |
| 2000 | Rental income | 12,683 | |
| | Capital gain income | 128,531 | |
| | Miscellaneous expenses | 35,398 | 176,612 |
| | | | |
| 2001 | Rental income | 15,431 | |
| | Other income | 36,594 | |
| | Dividend/wage income | 2,894 | |
| | Miscellaneous expenses | (18,358) | 36,561 |

The next schedule below reflects the adjustments respondent made to petitioner's reported income for 1999 and 2000 which remain in dispute:[2]

| Year | Disputed Adjustments | Increase to P's Income |
|------|----------------------|------------------------|
| 1999 | Distribution from trust | $110,000 |
| | Other income | 2,500 |
| | | |
| 2000 | Distribution from trust | 79,541 |
| | Other income | 190,384 |

OPINION

Under section 6663(a), where the Commissioner establishes that an underpayment of tax, or a portion thereof, required to be shown on a return is attributable to the taxpayer's fraud, the Commissioner may add to the tax a penalty equal to 75 percent of the underpayment. To prove a taxpayer's fraud, respondent has

---

[2] No income adjustments remain in dispute for 2001.

the burden of establishing by clear and convincing evidence both the existence of an underpayment and the taxpayer's fraudulent intent. Sec. 7454(a); Rule 142(b); Korecky v. Commissioner, 781 F.2d 1566, 1568 (11th Cir. 1986), affg. T.C. Memo. 1985-63; Parks v. Commissioner, 94 T.C. 654, 660-661 (1990).

If respondent establishes by clear and convincing evidence that any portion of an underpayment is attributable to fraud, the entire underpayment for a year is to be treated as attributable to fraud, except with respect to so much of the underpayment as results from adjustments which the taxpayer establishes by a preponderance of the evidence is not attributable to fraud. Sec. 6663(b). As stated, respondent contends that the 75-percent civil fraud penalty should apply to all of the positive adjustments to petitioner's income.

Fraudulent intent is defined as "'actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing.'" Estate of Temple v. Commissioner, 67 T.C. 143, 159 (1976) (quoting Mitchell v. Commissioner 118 F.2d 308, 310 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939)).

Whether petitioner's fraudulent intent has been established is to be analyzed on the basis of all of the facts and circumstances in evidence, Korecky v. Commissioner, supra at 1568, including petitioner's experience and education,

Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992),

Grosshandler v. Commissioner, 75 T.C. 1, 19-20 (1980).

Courts have developed several objective "badges" of fraud, of which three are particularly relevant in this case: (1) Substantial understatements of income; (2) failure to maintain or submit adequate books and records; and (3) failure to cooperate with tax authorities. Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Clayton v. Commissioner, 102 T.C. 632, 647 (1994).

Petitioner now agrees that he underreported his income and his tax liabilities for 1999, 2000, and 2001. Thus, to sustain fraud in this case, we need only decide whether petitioner's underpayments were due to fraudulent intent.

Petitioner claims that it was the advice and influence of Mayer and petitioner's impaired memory and judgment, rather than fraudulent intent, that caused petitioner to rely on the section 861 theory, to file zero returns for 1999 and 2000, and to underreport his income and his tax liabilities. Petitioner also claims that because he did not file a zero return for 2001, he did not fraudulently underreport his tax liability for 2001.

With respect to petitioner's 1999, 2000, and 2001 individual Federal income tax returns, the evidence establishes petitioner's fraudulent intent.

Certainly petitioner's college accident may have impaired his cognitive abilities and judgment. However, after the

accident, petitioner earned a bachelor's degree in geology and a master's degree in hotel administration, was a manager at hotels, restaurants, and a shipping company, and conducted sophisticated business activities, such as owning and managing rental real estate and trading securities. Petitioner has not submitted medical or other documentation showing that during any of the years pertinent to this case he suffered from a medical condition which in any substantial way affected his judgment.

At the time he filed his 1999 and 2000 zero tax returns, petitioner was aware of his obligation to report and to pay taxes on his income. At the January 21, 2003, meeting, respondent's audit examiner informed petitioner that the section 861 theory was frivolous, warned petitioner of the consequences of filing frivolous tax returns, and provided petitioner with the opportunity to avoid those consequences by submitting to respondent information relating to his actual income for 1999. Petitioner appears to have ignored the advice of respondent, his father, his brother (an attorney), and his supervisor, and he also failed to seek the advice of an independent accountant, attorney, or other professional.

On audit petitioner was uncooperative, and petitioner ignored respondent's telephone and letter requests for records and financial information relating to 1999, 2000, and 2001.

Further, the statements attached to petitioner's 1999 and 2000 zero Federal income tax returns do not disclose wage and

income information relating to petitioner's employment and other income-producing activity for 1999 and 2000.

Although petitioner in 2004 filed amended returns for 1999 and 2000 and an original return for 2001 reporting some of his income in each year, petitioner did so only after respondent's audit, examination, and repeated notices, warnings, and requests.

We conclude that petitioner's agreed understatements of income of $59,209, $176,612, and $36,561 for 1999, 2000, and 2001, respectively, and the underpayments of tax relating thereto, are attributable to petitioner's fraudulent intent.

Disputed Adjustments

FINDINGS OF FACT

With regard to respondent's positive $110,000 adjustment for 1999 relating to a distribution from a trust, on December 16, 1999, petitioner's mother gave him a $10,000 gift.  On December 17, 1999, petitioner's parents lent ALT $100,000, secured by a mortgage note dated December 22, 1999.  As evidence of the $10,000 gift and the $100,000 loan, petitioner submitted a $10,000 canceled check dated December 17, 1999, from his parents to him, a canceled $100,000 check dated December 17, 1999, from his parents to ALT, and a mortgage note dated December 22, 1999, reflecting ALT's $100,000 debt obligation in favor of his parents.

With regard to respondent's $2,500 adjustment for 1999 relating to other income, in 1999 petitioner's brother repaid to petitioner a $2,500 loan petitioner had made to his brother. This loan repayment was verified by 1999 bank statements reflecting two check deposits totaling $2,500 from petitioner's brother.

With regard to the $79,541 petitioner received in 2000 from his father's trust, the evidence indicates that on October 6, 2000, his father lent $79,541 nominally to ALT. The loan was verified by a $79,541 canceled check dated October 6, 2000, from petitioner's father's trust nominally to ALT and a letter dated November 8, 2000, from petitioner's father to petitioner describing the loan. On September 2, 2005, petitioner repaid his father the $79,541 loan.

With regard to respondent's $190,384 adjustment for 2000 relating to other income, on February 29, 2000, and on October 4, 2000, petitioner's parents lent nominally to ALT $18,500 and $81,469, respectively. These loans were verified by an $18,500 canceled check dated February 29, 2000, from petitioner's parents nominally to ALT, by bank statements for 2000 reflecting a wire transfer of $81,469 from petitioner's father nominally to ALT, and by the above November 8, 2000, letter from petitioner's father to petitioner describing the loans. It is unclear from the record whether petitioner repaid his father the February 29,

2000, $18,500 loan, but on September 2, 2005, petitioner repaid his father the October 4, 2000, $81,469 loan.

Also, in 2000 petitioner made a $50,000 deposit on the purchase of a property owned by the real estate management company at which he worked, and on April 28, 2000, the real estate management company returned to petitioner the $50,000 deposit. The April 28, 2000, return of petitioner's $50,000 deposit was verified by a $50,000 canceled check dated April 28, 2000, from the real estate management company to petitioner.

OPINION

Generally, as to the proper calculation of a taxpayer's income, the taxpayer bears the burden of proof, and the Commissioner's determination of a taxpayer's income and tax liabilities are entitled to a presumption of correctness. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Feldman v. Commissioner, 20 F.3d 1128, 1132 (11th Cir. 1994), affg. T.C. Memo. 1993-17.[3]

Petitioner has met his burden of proof with regard to the two disputed adjustments for 1999. We conclude that the $110,000 and the $2,500 do not constitute income to petitioner, and we

---

[3] Because we find that petitioner failed to adequately cooperate with respondent's reasonable requests for information relating to petitioner's income for 1999, 2000, and 2001, petitioner does not qualify for a shift in the burden of proof under sec. 7491(a).

disallow respondent's positive 1999 income adjustments relating thereto.

Petitioner also has met his burden of proof with regard to the nontaxable nature of the $79,541 received from his father's trust and with regard to $149,969 of the total $190,384 other income in dispute ($18,500 and $81,469 loans from petitioner's parents and $50,000 deposit refund equals $149,969).  We conclude that the $79,541 disputed adjustment and $149,969 of the other income disputed adjustment for 2000 do not constitute income to petitioner.

However, petitioner has not submitted evidence, and therefore has not met his burden of proof, with regard to the remaining $40,415 of the other income disputed adjustment for 2000, and we sustain a $40,415 increase in petitioner's other income for 2000.

As stated, because of petitioner's failure to meet his burden of proof under section 6663(b) as to the nonfraudulent nature of the adjustments we sustain, the fraud penalty also attaches thereto.

To reflect the foregoing,

Decision will be entered
under Rule 155.